## NETTIE JESSIE v. STATE.

No. A-4330.   Opinion Filed July 14, 1924.
Rehearing Denied Nov. 29, 1924.
(230 Pac. 519.)

(Syllabus.)

1. **Homicide—Evidence Sustaining Conviction of Manslaughter in First Degree.** The evidence examined, and held amply sufficient to support the verdict.

2. **Trial—Instruction not Required on Theory not Reasonably Supported by Evidence.** The trial judge is not compelled to delve into the realms of conjecture or speculation to instruct on some theory of the case not reasonably supported by the evidence.

3. **Trial—Refusal of Correct Requested Instruction, Covered by Charge, not Erroneous.** Where the instructions given sufficiently cover the law, as contained in a requested instruction, it is not error to refuse such instruction, although the same may correctly state the law.

Appeal from District Court, Tulsa County; A. C. Hunt, Judge.

Nettie Jessie was convicted of manslaughter in the first degree, and she appeals. Affirmed.

Ed Crossland, for plaintiff in error.

The Attorney General and J. Roy Orr, Asst. Atty. Gen., for the State.

BESSEY, J.   Nettie Jessie, plaintiff in error, was in the district court of Tulsa county convicted of manslaughter in the first degree for the killing of her husband on the 18th day of June, 1921. By the verdict of the jury her punishment was fixed at imprisonment in the penitentiary for a term of seven years.

The plaintiff in error, here designated the defendant, with her husband, Dan Jessie, both negroes, lived in basement rooms of an apartment or rooming house in Tulsa. Defendant did the laundry work for the occupants of the house and performed

other menial services for others in the neighborhood. The deceased husband, just prior to his demise, was employed at an automobile tire sales and service station. On the day before the homicide he quit work at 9 o'clock p. m., and was ordered to change to the morning shift, beginning at 7 o'clock the next morning. A little before that time a woman occupying the apartment above these negroes' rooms heard the husband call her as if in distress. She went to the basement door and saw the defendant and the deceased standing facing each other, a few feet apart, and saw that blood was spouting from the man's chest in the region of his heart. He told this woman that Nettie had stabbed him. The defendant said, "He isn't hurt much." The woman then called a physician. Later the defendant told her that Dan had "laid out all night," and because she had "bawled him out" for it he struck her in the mouth. This witness was corroborated by two other witnesses.

The story related by the defendant at the trial was that, after the deceased had eaten his breakfast and was about to go to work, defendant was standing at the table and using a paring knife to cut pieces out of a cantaloupe which she was eating; that she and her husband indulged in a playful scuffle and that she accidentally and unintentionally stabbed him; that, as she threw out her hand to ward off a playful blow, the deceased lurched towards her and against the knife in her hand, so inflicting the mortal wound.

The assignments of error seriously urged by the defendant are two: (1) That the evidence is insufficient to support the verdict. (2) That the court erred in refusing to instruct the jury on the law of self-defense, and upon the theory of the defendant that the killing was accidental.

Defendant's story that the stabbing was accidental cannot be harmonized with her conduct and statements immedi-

ately following the stabbing. That the wound was accidentally inflicted while the parties were at play might be within the realm of possibility, but seems exceedingly improbable. True, just prior to his death, the deceased husband asked where Nettie was, and, on being told that she was probably in jail, said:

"Go get her out. She can come and wait on me. We were just playing."

This dying statement may have been true, or partly true; but the positive testimony of others, considered in connection with the physical facts proved, indicates that, if the incidents were commenced playfully, they terminated in a quarrel, and that the cutting was done purposely, though possibly without intent to kill. Dying declarations are not always equivalent to positive proof. They are to be considered and weighed in connection with all the circumstances and other testimony, like any other oral evidence. The verity of this wounded negro's statement and its real import were for the determination of the jury.

There was no evidence calling for an instruction on self-defense. The theory of the defendant was that the wound was inflicted accidentally, and there was no evidence that the deceased made an unlawful assault upon her, and no claim that she was resisting an assault, or was in fear of death or great bodily harm. The court, in apt language, instructed the jury upon the law of justifiable and excusable homicide, and committed no error in refusing to instruct the jury on that point in the language requested by defendant. Smith et al. v. State, 22 Okla. Cr. 383, 212 P. 1012; Ussaery v. State, 22 Okla. Cr. 397, 212 P. 137; Newby v. State, 17 Okla. Cr. 291, 188 P. 124; Byers v. Territory, 1 Okla. Cr. 678, 100 P. 261, 103 P. 532; Wells v. Territory, 14 Okla. 437, 78 P. 124.

We feel that the playful killing of husbands by the other spouse, either black or white, should be discouraged. The judgment of the trial court is affirmed.

MATSON, P. J., and DOYLE, J., concur.