## C. H. MARTIN v. STATE.

No. A-6228.  Opinion Filed March 2, 1929.
Rehearing Denied April 27, 1929.
(287 Pac. 424.)

M. M. Thomas and Clyde H. Wyand (Nowlin, Spielman & Thomas, in reply brief) for plaintiff in error.

James R. Tolbert, O. C. Wybrant, S. B. Laune, M. B. Cope, and J. T. McIntosh, for the State.

· CHAPPELL, J.  On June 26, 1925, an information was filed against C. H. Martin, plaintiff in error, hereinafter called defendant, in the district court of Woodward county, state of Oklahoma, charging the defendant, C. H. Martin, and J. E. Shellhart jointly with the offense of receiving a deposit in the Central Exchange Bank, an insolvent bank at Woodward, Okla., knowing at the  time that said bank was insolvent.

Upon application of the defendant, a severance was granted and the defendant, C. H. Martin, was put upon trial, and by a verdict of the jury he was found guilty as charged and his punishment fixed at two years in the state penitentiary at McAlester.

On the 15th day of January, 1923, one R. L. Finney deposited in said bank $20, the property of Elston & Finney, a copartnership, and other persons made deposits in said bank on that day.  On the night of January 15, 1923, the defendant disappeared and was absent from the city of Woodward for a period of ten weeks, his whereabouts being unknown during all that time.  On the 16th day of January, 1923, J. E. Shellhart, who was vice president of the bank, called the state bank commissioner and caused the bank to be placed in the hands of such commissioner. After an exhaustive examination of the books, records, notes, accounts, and cash of the bank, the bank commissioner found that its assets at the time of the closing were exceeded by its liabilities by more than $200,000, and the bank was and had been for several months prior hopelessly insolvent.

The defendant demurred to the information, which demurrer was by the court overruled, and thereupon the defendant filed in said court a plea of former conviction,

which plea of former conviction and former jeopardy was by the court overruled on the ground that the same was insufficient in law, to which ruling the defendant excepted. On the 19th day of September, 1925, this cause came on for trial, which resulted in the verdict of the jury as heretofore stated. The defendant had formerly been convicted in the district court of Alfalfa county, on change of venue from Woodward county, of the crime of receiving a deposit in an insolvent bank from one Nora B. Lupton knowing the said bank to be insolvent, which case is No. A-5588 (46 Okla. Cr. 388, 287 Pac. 419) in this court and upon conviction in the present case of receiving a deposit from R. L. Finney in an insolvent bank, knowing the same to be insolvent. His appeal in this case, on motion of defendant, was consolidated with case No. A-5588. The defendant briefed the two cases in one brief, discussing errors complained of separately as they applied to each of the two cases. The state briefed each case separately, and the defendant, by attorneys, Nowlin, Spielman & Thomas, filed a supplemental brief in this case, adopting the arguments made by defendant's counsel in A-5588 as part of their argument in this case.

In case No. A-5588 this court passed on 8 of the errors complained of in the syllabus and generally disposed of the balance of the errors complained of in No. A-5588. The defendant in his motion for new trial in this case sets out 45 separate errors, but the court only deems it necessary to pass upon 4 of the alleged errors, since the other questions have all been disposed of in No. A-5588.

The first error the court deems it necessary to consider in this case is the plea of former jeopardy. It will serve no good purpose to set out all of the plea, but that part pertinent to the issue in this case is as follows:

"Defendant further states that the evidence, facts and circumstances relied upon by the state of Oklahoma for a conviction in the case at bar are substantially the same as the evidence, facts and circumstances in the cause tried and upon which said defendant was convicted in the district court of Alfalfa county, state of Oklahoma, save and except that this defendant is charged in the case at bar with receiving a deposit from another person other than the one named in the indictment filed in case number 909, above mentioned, and that the date of the alleged offense is the same as the date alleged in the indictment upon which said defendant was convicted."

In Case No. A-5588 this court uses the following language in the syllabus:

"Under section 1521, C. O. S. 1921, 'All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals.' (a) Where the active officers of an insolvent bank in charge of its affairs permits or directs its members or employees to receive deposits with knowledge of its insolvency, one exercising such authority cannot escape criminal responsibility by showing that he himself did not manually, receive the deposit. (b) Under section 4128, C. O. S. 1921, each deposit received in an insolvent bank, constitutes the offense of receiving a deposit in an insolvent bank, and the mere fact that several deposits are received on the same day does not make the receiving of them one offense."

In the case of Morris v. Territory, 1 Okla. Cr. 617, 99 Pac. 760, this court says:

"(a) If a plea of former acquittal or former jeopardy shows upon its face a different offense from that for which the defendant is then on trial, or if it is otherwise fatally defective. it should not be submitted to the jury, but should be stricken from the record of the court. (b) If, in the same affray, a person shoots and kills one person, and by

a second shot kills another person, he may be separately prosecuted for killing each of them, and may be properly acquitted in one case and convicted in the other."

The receiving of a deposit on the 15th day of January, 1923, from Nora B. Lupton, constituted a complete offense. The receiving of another deposit on the same day from R. L. Finney constituted another and separate offense. It is no answer to this argument to say that if the bank received 500 deposits on that day, that the defendant could be harassed, prosecuted, and punished for 500 separate offenses. The general rule is that the former prosecution or acquittal must have been upon a prosecution of the identical act or crime. To sustain the plea of former jeopardy, the offense must be identical in fact and law. The trial court committed no error in sustaining a demurrer to defendant's plea of former jeopardy.

The defendant next complains that the court erred in permitting the state to exercise a sixth peremptory challenge to the jury. Pages 17, 18, and 19 of the case-made read as follows:

"Now, to wit: on September 19, 1925, at the hour of nine o'clock, a. m., of said day, said day being a day of a regular term of said court, the above cause comes regularly on for trial, the plaintiff, the state of Oklahoma, appearing by S. B. Laune, county attorney of Woodward county, Oklahoma, J. T. McIntosh, attorney for the State Banking Department, J. L. Tolbert and O. C. Wybrant associate counsel, and the said defendant C. H. Martin, appearing in person and by M. M. Thomas and Clyde H. Wyand, his attorneys:

"Thereupon, the court clerk calls into the jury box twelve of the jurors heretofore impaneled for said term of court, and as they are called, they are by the clerk duly sworn to well and truly answer any and all questions that may be propounded to them touching their competency

and qualifications to serve as jurors upon the trial of said cause, and the jurors so called having been thus duly sworn, they are examined on their voir dire as to their competency and qualifications to serve as jurors upon the trial of said cause, and as a juror is excused for cause or upon peremptory challenge, another juror is called, sworn and examined, and such examination is continued from day to day from said September 19, 1925, to September 23, 1925, at which time counsel for the state and defendant have exercised all of their challenges for cause and peremptory challenges:

"Thereupon, the twelve jurors remaining in the jury box are by the court clerk duly sworn to try the issues in said cause:

"Mr. Thomas: If the court please, I want to make a motion here in order to preserve the record, and out of the hearing of the jury:

"Motion by Mr. Thomas: Comes now the defendant C. H. Martin and moves the court to discharge this jury, for the reason that the same was not duly impaneled, examined and sworn according to law, for the following reason, to wit: That the court permitted the state of Oklahoma, after excusing the juror Fennimore, and after the state of Oklahoma and defendant had exercised their five peremptory challenges, to exercise a sixth peremptory challenge to the jury as a whole.

"The Court: Your motion to discharge jury is overruled.

"Mr. Thomas: To which ruling the defendant Martin excepts."

In the case of Munson v. State, 13 Okla. Cr. 569, 165 Pac. 1162, this court says:

"Alleged errors occurring during the trial must appear from, and be supported by, the record as certified by the trial judge. * * * Where the record does not sup-

port such alleged errors, this court is without authority to decide questions of law involved."

There being nothing in the case-made to support the contention of the defendant and it affirmatively appearing that proper procedure was had in the impaneling of the jury the error complained of cannot be considered by this court.

The defendant next complains that the court erred in permitting the court reporter, one Hugo, to read from the transcript of the evidence taken in the case of Martin v. State, being case No. A-5588 in this court, 46 Okla. Cr. 388, 287 Pac. 419, which evidence read, was certain voluntary admissions made by the defendant, Martin, in his former trial in No. A-5588, which the state claimed was pertinent to the issues in this case:

"In the absence of statutory regulation of the subject, testimony and written statements given voluntarily or made by a party or a witness in a judicial proceeding, are, as admissions, competent against him on the trial of any issue in a criminal case to which they are pertinent. Admissions made in the course of judicial proceedings are substitutes for, and dispense with, the actual proof of facts." 16 C. J. § 1248, p. 629.

This court has always held that admissions made by defendant which are against his interest and made without duress or promise of reward, are admissible against defendant in the trial of any case where the admissions would be pertinent to the issue. This court has always held that admissions made by defendant in a former trial may be used against him in a retrial of the same case, and we know of no good reason why this rule should not be broadened to include admissions made against his interest in another judicial proceeding; as is said in Corpus Juris: "They are conclusive on the person making them at least

for the purposes of the case in which they are made." Since the admissions were pertinent to the issue in the case, it was not reversible error for the court to permit the reading of the same to the jury, although it was done in an irregular manner.

And, finally, the defendant complains that the court erred in singling out the defendant and giving a special instruction concerning his testimony. The instruction complained of is in the following language:

"The jury are instructed that under the laws of this state, a person accused of a crime has the right to be a witness on his own behalf, and in this case the defendant having been a witness and having testified in his own behalf, the jury have no right to disregard his testimony from mere caprice or on the ground alone that he is the defendant and is interested in the event of the suit, or that he stands charged with crime; but you are instructed that his testimony ought to be received and considered by the jury in connection with all the other evidence in the case and should be weighed and measured by the jury in the same manner as the testimony of other witnesses in the case"

Thereafter the court made the following statement to the jury:

"Gentlemen of the jury, the court was under the impression at the time the instructions were prepared in this case that the defendant, C. H. Martin, had requested that instruction No. 18 be given. It is now disclosed that the defendant did not make such a request. The court now withdraws from your consideration, gentlemen of the jury, instruction No. 18, heretofore read in your presence and hearing and you are instructed by the court not to consider the same, and said instruction No. 18 is withdrawn from the said instructions and the instructions of the court, with the exception of said instruction No. 18, are submitted to the jury. Thereupon, the defendant C.

H. Martin excepts to the order of the court in withdrawing from the consideration of the jury said instruction No. 18, and exceptions are by the court allowed. The defendant objects to the court withdrawing said instruction No. 18, which is overruled and exceptions are noted by the defendant."

In the case of Munson v. State, 13 Okla. Cr. 569, 165 Pac. 1162, this court had under consideration the precise question involved in this case, which instruction had been given by the same judge that tried the present case, Judge James B. Cullison. In that case, in an opinion written by Matson, J., the court says in the syllabus:

"Where the court in a separate instruction specifically told the jury that it had 'no right to disregard the testimony of the defendant from mere caprice or on the ground alone that he is the defendant and is interested in the event of the suit, or that he stands charged with crime, * * * but that his evidence should be weighed and measured in the same manner as the testimony of other witnesses in the case.' and in a subsequent instruction the court lays down the general rule by which the jury may be guided in determining the credibility of witnesses and the weight to be given their testimony, held, that said separate instruction did not amount to an adverse or prejudicial comment upon the defendant's interest in the result of the action, nor was it a comment by the court on the weight to be given defendant's testimony. The instructions, considered together, placed the defendant upon the same plane with the other witnesses."

In the body of the opinion the court says:

"It is contended that this instruction is erroneous and prejudicial to the substantial rights of the defendant in that it singles out the defendant and calls the jury's attention to the fact that he is an interested witness in the case. It is true that this court has held in numerous cases that it is erroneous for the court to call the jury's

attention to the fact that the defendant is an interested witness, and that the jury may consider such fact in arriving at its verdict. The instructions condemned by this court, and held to be prejudicially erroneous, were much more drastic than the foregoing instruction given in this case. The instructions condemned were those in which the court specifically told the jury that it was its duty, in arriving at the verdict, to consider the fact that the defendant was an interested witness in his own behalf. The instruction given in this case was a precautionary one; the jury being epecially told that it had 'no right to disregard his testimony from mere caprice or on the ground alone that he is the defendant and is interested in the event of the suit, or that he stands charged with crime, * * * but that his evidence should be weighed and measured in the same manner as the testimony of other witnesses in the case.' While this instruction perhaps tended to single the defendant out, we cannot see wherein its effect was to prejudice his testimony. It was intended by the court for his protection, to place him on the same footing with the other witnesses, and being a part of the law of the case the jury was bound so to receive it. But in such instruction the jury was cautioned and prohibited from disregarding the testimony of the defendant from mere caprice, or upon the ground alone that he was the defendant. In addition, the jury was told that it should consider the evidence of the defendant in the same manner and weigh it the same as it would that of any other witness. Certainly this was all the defendant was entitled to. The jury is entitled to consider the interest that any witness has in the result of the trial, and when the defendant is placed upon the same plane with any other witness who testifies, it is unreasonable to say that he was prejudiced just because the jury was told of that fact in a separate instruction."

The court takes this occasion to admonish trial judges that the giving of the instruction complained of is unnecessary and it is better practice not to give it. In the

present case the court gave the following general instruction:

"You are the sole judges of the credibility of the witnesses, of the weight of evidence, and of the facts. It is your right to determine from the appearance of the witnesses on the stand, their manner of testifying, their apparent candor or frankness or the lack thereof, intelligence, which of the witnesses are more worthy of credit and to give weight accordingly. In determining the weight to be given to the testimony of the witnesses you are authorized to consider their relationship to the parties, if any is shown, their interest, if any, in the result of the suit, their temper, feeling or bias, if any has been shown, their demeanor on the stand, their means of information and the reasonableness of the story told by them and to give weight accordingly."

This instruction sufficiently advised the jury and rendered unnecessary the giving of the instruction complained of.

In the case of Munson v. State, Judge Matson says:

"This court is not allowed to reverse a judgment of conviction on account of the misdirection of the jury unless after an examination of the entire record it clearly appears that there has been a miscarriage of justice, or that the defendant has been deprived of some constitutional or statutory right."

We are unable to see wherein the defendant was prejudiced by the giving of the instruction complained of since the record discloses the guilt of the defendant beyond a reasonable doubt.

The evidence reveals a condition of wanton crime and disregard of the rights of the bank's customers on the part of the defendant and his co-officers which would have justified the jury in assessing the full penalty of five years'

imprisonment and $5,000 fine; but this court is bound by the punishment as fixed by the jury and can only examine the record to determine whether the evidence is sufficient to support the verdict and if the legal rights of the defendant have been protected by the court. The evidence being amply sufficient to support the verdict, and the defendant having been given a fair trial, and no substantial errors of law appearing in the record, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.

On Petition for Rehearing.

Titus & Talbot and Charles Swindall, for plaintiff in error.

L. A. Foster, B. B. Laune, J. T. McIntosh, James R. Tolbert, O. C. Wybrant, J. Wilford Hill, and M. B. Cope, for the State.

CHAPPELL, J. Defendant has filed petition for rehearing in this cause and assigns as error of the court: "The trial court committed reversible error in admitting in evidence the numerous cash letters of the Federal Reserve Bank, over the objections of the plaintiff in error." Defendant then quotes from the original opinion in this case, "And, finally, the defendant complains that the court erred in admitting in evidence certain cash letters, not properly identified, and in admitting in evidence the liquidating report of the Bank Commissioner * * * without having been properly identified and verified," and complains that the court did not discuss the admission in evidence of the cash letters.

The defendant relies on the case of Appelget v. State, 33 Okla. Cr. 125, 243 Pac. 251, to sustain defendant's contention that the court erred in admitting these cash let-

424

ters. Mr. Justice Edwards, speaking for the court in that case, said:

"Record examined, and held, that documentary evidence not properly identified was admitted, that the right of cross-examination was unduly restricted, and that the court misdirected the jury in defining insolvent as used in the criminal law."

It will be noted that in the Appelget Case the doucmentary evidence was not properly identified, the right of cross-examination was unduly restricted, and the court misdirected the jury in defining "insolvent" as used in the criminal law. In the case at bar none of these errors were committed by the trial court. The cash letters were not only identified by the witness Wonderlich, but some of them were identified by the cashier of the bank, who testified that the letters were received by the bank and not paid upon order of the defendant, for the reason that there was not sufficient cash in the bank to pay them. There was evidence then that the letters were returned to the Federal Reserve Bank at Oklahoma City, and were identified as the letters returned from the defendant's bank. The defendant was given every opportunity of cross-examination, and the court did not misdirect the jury in defining "insolvent" as used in the criminal law.

The conditions surrounding the trial of the case at bar were all so vastly different to those in the Appelget Case. In the Appelget Case the books and records of the bank were in the possession of the bank examiner and were available to be used in the trial of the case. In the case at bar, after the indictment and before the trial, all the books and records of the bank mysteriously disappeared. It then became necessary in the trial of the case for the state to offer secondary evidence. The cash letters and

the liquidation report of the bank commissioner were the best secondary evidence available. This court held they were sufficiently identified to entitle the state to offer them as secondary evidence, and this court properly held that they were admissible.

Defendant, in his brief supporting his petition for a rehearing, says:

"These cash letters were treated by the state and considered by the jury as being liabilities of the Central Exchange Bank, and as being evidence of unpaid demands upon the Central Exchange Bank. A cash letter is in no sense a liability of a bank. Every dollar evidenced by the cash letters has already been charged as a liability of the bank in the 'individual deposits' listed as liabilities of the bank."

Individual deposits are not all the liabilities that the bank has in a case of this kind. The bank may be indebted for money borrowed, and also indebted upon drafts, bills of exchange, and cashier's checks issued by the bank and negotiated in the open market. In due course items of this kind would reach the Federal Reserve Bank and would be a liability of the bank. Whether a cash letter was a liability of the bank or not would depend upon the facts surrounding that particular cash letter. Since the books of the bank were not available, it was competent for the state by secondary evidence to establish the liability of the bank, and the court did not commit error in admitting the cash letters and liquidation report of the bank commissioner

This court carefully considered every question raised by the defendant at the time the original opinion was handed down. No new questions being presented in the petition for rehearing, and no sufficient ground being es-

tablished for the granting of a rehearing, the petition for rehearing is denied, and mandate ordered issued.

EDWARDS, P. J., and DAVENPORT, J., concur.