## C. H. MARTIN v. STATE.

No. A-5588.  Opinion Filed March 2, 1929.
Rehearing Denied May 17, 1930.
(287 Pac. 419.)

Titus & Talbot and Charles Swindall, for plaintiff in error.

L. A. Foster, S. B. Laune, J. T. McIntosh, James R. Tolbert, O. C. Wybrant, J. Wilford Hill, and M. B. Cope, for the State.

CHAPPELL, J.  The indictment charges C. H. Martin, plaintiff in error, hereinafter called defendant, with receiving a deposit in the Central Exchange Bank, an insolvent bank at Woodward, Okla., knowing at the time that said bank was insolvent.  The jury found him guilty and fixed his punishment at two years in the penitentiary and a fine of $5,000.  From this judgment he appeals.

On the 15th day of January, 1923, one Nora B. Lupton deposited in said bank $32.14, the property of one A. F. Lupton, and numerous other persons made deposits in said bank on that day.  On the night of January 15, 1923, the defendant disappeared and was absent from the city of Woodward for a period of ten weeks, his whereabouts being unknown during all that time.  On the 16th day of January, 1923, J. E. Shellhart, who was vice president

of the bank, called the state bank commissioner and caused the bank to be placed in the hands of such commissioner. After an exhaustive examination of the books, records, notes, accounts, and cash of the bank, the bank commissioner found that its assets at the time of the closing were exceeded by its liabilities by more than $200,000, and the bank was and had been for several months prior hopelessly insolvent.

On the 7th day of January, 1924, the grand jury, impaneled in the district court of Woodward county, returned the indictment in this case against C. H. Martin, the defendant. The defendant demurred to such indictment, which demurrer was overruled by the court. Thereafter, on the 8th day of September, 1924, the defendant applied for a change of venue, which change was granted and said cause transferred to the district court of Alfalfa county and was assigned for trial in the district court of Alfalfa county at Cherokee on the 22d day of September, 1924. The case was called for trial on the 22d day of September, 1924, and thereafter said cause was reassigned for trial on the 3d day of October, 1924, at which time the trial was had. The defendant objected to being placed on trial until the next term of court, pleading section 2634, C. O. S. 1921, which provides that defendant be tried at the next term of court after change of venue had been granted. This objection was by the court overruled and defendant excepted.

This prosecution is based on section 4128, C. O. S. 1921:

"No bank shall accept or receive on deposit, with or without interest, any money, bank bills or notes, or United States treasury notes, gold or silver certificates, or currency, or other notes, bills, checks or drafts, when such bank is insolvent; and any officer, director, cashier, man-

ager, member, party, or managing party of any bank who shall knowingly violate the provisions of this section, or be accessory to or permit or connive at the receiving or accepting of any such deposit, shall be guilty of a felony, and upon conviction thereof shall be punished by a fine not exceeding five thousand dollars, or by imprisonment in the penitentiary not exceeding five years, or by both such fine and imprisonment."

Under the provisions of this statute a bank must be insolvent, a deposit must be received, and the officers of the bank must know that the bank is insolvent at the time the deposit is received, and must receive or permit the receipt of such deposit. It appears from the evidence that the defendant, Martin, was the active officer in charge of the bank and had been for many years; that he hired the help, directed the work of all the employees, made the loans, and generally supervised the transaction of all business of the bank.

The evidence discloses that the defendant, Martin, did not personally receive the deposit, but that he was in and out of said bank during all of the 15th day of January, 1923, and must have known the bank was receiving deposits and transacting business in the usual manner except that it was failing to pay its cash letters and exchange items for that day.

The first error complained of by the defendant is that the court erred in overruling the objections and exceptions of the defendant to being placed upon trial at a session of the March, 1924, term of said district court of Alfalfa county, for the reason said trial was not at the first term or next term of the district court of Alfalfa county, after the date the venue was changed from the district court of Woodward county to the district court of Alfalfa coun-

ty, as required by law, to which ruling of the court the defendant excepted at the time.

Section 2638, C. O. S. 1921, specifically provides:

"The court to which the action is removed must proceed to trial and judgment therein the same in all respects as if the action had been commenced in such court."

Section 2634, C. O. S. 1921, provides:

"The cause must be docketed and stand for trial at the first term of court after the cause has been transferred."

In Sledge v. State, 40 Okla. Cr. 421, 269 Pac. 385, this court held:

"That the words 'first term of court' mean the immediate term when the cause was transferred; otherwise stated, the words 'first term' mean the present term."

The next error complained of is that the court erred in overruling motion to dismiss the cause on the ground of a variance between the allegations of the indictment and the proof. Section 1521, C. O. S. 1921, provides:

"All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals."

In the case of White v. State, 36 Okla. Cr. 57, 252 Pac. 455, this court held:

"Where the active officers of an insolvent bank in charge of its affairs permit or direct its members or employees to receive deposits with knowledge of its insolvency, one exercising such authority cannot escape criminal responsibility by showing that he himself did not, manually, receive the deposit."

In the instant case the allegation is that the deposit was received by C. H. Martin; the proof was that the deposit was received by Nell Costello, a clerk working under the immediate order and direction of the defendant. Under the rule laid down in the White Case, Martin was a principal even though he did not actually and personally receive the deposit, and the proof was sufficient to sustain the allegation of the indictment that Martin received the deposit.

The defendant next complains that the trial court committed error in refusing to give certain requested instructions. In the case of Jessie v. State, 28 Okla. Cr. 309, 230 Pac. 519, this court held:

"The trial judge is not compelled to delve into the realms of conjecture or speculation to instruct on some theory of the case not reasonably supported by the evidence. * * * Where the instructions given sufficiently cover the law, as contained in a requested instruction, it is not error to refuse such instruction although the same may correctly state the law."

The theory of the defendant in this case was that Martin could not be guilty unless he, himself, actually received the deposit. The theory of the state was as indicated in the syllabus of this opinion. Under the law as laid down in the case of White v. State, 36 Okla. Cr. 57, 252 Pac. 455, and Jessie v. State, 28 Okla. Cr. 309, 230 Pac. 519, the special instructions requested by the defendant were wholly inapplicable to the facts and law of the case, and giving of same was properly refused.

The defendant further complains that the court erred in giving to the jury instruction No. 1, because it placed the burden on the defendant to prove his innocence. Instruction No. 1 is as follows:

"You are instructed that the burden of proof in this case is upon the state to prove beyond a reasonable doubt each and every material allegation in the indictment contained, and if you find from the evidence that the state has proved each and every material allegation contained in the indictment, beyond a reasonable doubt, then it will be your duty to find the defendant guilty, but, if you find from the evidence that the state has not proved each and every material allegation contained in the indictment, beyond a reasonable doubt, then it will be your duty to find the defendant not guilty."

This court has repeatedly held that instructions which place upon the defendant the burden of proof are fatal, but in this case under no method of reasoning can the language be so twisted as to shift the burden of proof from the state to the defendant. While the instruction is not skillfully drawn, yet it does make sufficiently plain the burden of the state to prove the guilt of the defendant beyond a reasonable doubt.

The defendant next complains that the court erred in giving the jury instruction No. 4. Instruction No. 4 merely quotes in full the language of section 4116, C. O. S. 1921, as follows:

"A banking corporation organized under the provisions of this chapter shall be permitted to receive money on deposit not to exceed ten times the amount of its paid-up capital and surplus, deposits of other banks not included, and to pay interest thereon not to exceed the rate that may from time to time be fixed by the bank commissioner, as the maximum rate that may be paid upon deposits by banks in this state; to buy and sell exchange, gold, silver, coin, bullion, uncurrent money, bonds of the United States or this state, or of any city, county, school district or other municipal corporation thereof, and state, county, city, township, school district, or other municipal indebtedness; to lend money on chattel and personal se-

curity, or on real estate secured by first mortgages, running not longer than one year: Provided, that such real estate loans shall not exceed twenty per cent. of the aggregate loans of any such bank; to own a suitable building, furniture and fixtures, for the transaction of its business, the value of which shall not exceed one-third of the capital of such bank fully paid; Provided, further, that nothing in this section shall prohibit such bank from holding and disposing of such real estate as it may acquire through the collection of debts due it; and Provided, further, that all banking institutions now organized as corporations doing business in this state are hereby permitted to continue said business as at present incorporated; but in all other respects their business, and the manner of conducting the same, and the operation of said bank, shall be carried on subject to the laws of this state, and in accordance therewith; and Provided, further, that no bank, except those that have complied with or that may be organized under the laws of this state relating to trust companies, sha'l engage in any business other than is authorized by this article. And whenever it shall appear from the reports made for the preceding year by such banking corporation that the total deposits are more than ten times the amount of its paid-up capital and surplus, deposits of other banks not included, the bank commissioner shall have power, and it shall be his duty, to require such bank within thirty days to increase its capital or surplus to conform to the provisions of this chapter, or cease to receive deposits."

In the case of Welch v. State, 16 Okla. Cr. 513, 185 Pac. 119, this court says:

"An instruction embodying an abstract proposition of law should not be given, but the giving of same does not constitute reversible error, unless a miscarriage of justice or a denial of a defendant's constitutional or statutory rights has resulted therefrom."

In this case the instruction could not have been prejudicial to the defendant and the theory upon which the court gave the instruction seems to be that this section

of the law would enlighten the jury on the authority of the bank to transact business.

In our view of the case the giving of the instruction was not necessary, but was harmless error.

. The defendant next complains that the court erred in giving instruction No. 6, which is as follows:

"The court further instructs the jury that in this case there are three distinct elements of the offense which must be proven beyond a reasonable doubt before you convict the defendant; first, that the deposit mentioned in the indictment was received by the Central Exchange Bank of Woodward, Oklahoma, was insolvent at the time said deposit was received, the said defendant knew the Central Exchange Bank was insolvent."

This instruction is incomplete; there appears to be something left out of the case-made. On motion of the defendant this case was consolidated with No. A-6228, 46 Okla. Cr. ......, 287 Pac. 424, and the two cases were argued and submitted together, except that the 1st, 2d, 4th, 13th and 14th objections had no application to this case. The instruction as given in A-6228 is as follows:

"The court further instructs the jury that in this case there are three elements of the offense which must be proved beyond a reasonable doubt before you can convict the defendant: First: That the deposit mentioned in the indictment was received by the Central Exchange Bank of Woodward. Second: That the Central Exchange Bank of Woodward, Oklahoma, was insolvent at the time said deposit was received. Third: That at the time said deposit was received said defendant knew the Central Exchange Bank was insolvent."

It is the contention of the state that the two instructions are identical, but that through clerical error the 6th instruction in this case, A-5588, is not complete. While

the instruction as it appears in the record is informal and incomplete, yet there is sufficient in the instruction to advise the jury of the three elements to be proven in order to secure a conviction, and it is sufficient to present the three necessary elements of the crime charged.

The defendant next complains that the court's instructions, taken as a whole, are inconsistent, contradictory, misleading, and confusing, and for said reasons are prejudicial to the substantial rights of the defendant. But the defendant fails to point out the erroneous, contradictory, misleading, and confusing instructions. If such instructions were given to the jury, it was the duty of the defendant to point out what instructions are inconsistent with some other instructions; what instruction is contradictory, misleading or confusing; in what respects are the instructions given to the jury inconsistent, contradictory, misleading and confusing. None of these things has the defendant seen fit to do. In McCarty v. State, 21 Okla. Cr. 365, 207 Pac. 1069, this court says:

"Where the instructions as a whole fairly cover the law of the case, and are not misleading, although some instructions may be inartificially drawn, the general charge will be held sufficiently comprehensive."

The defendant saved exception to each and all of the instructions given by the court. Owing to the technical nature of the case and the large amount of testimony offered, the instructions are lengthy. Some of them are erroneous in some particular, but the errors are not important. In West v. State, 13 Okla. Cr. 312, 164 Pac. 327, L. R. A. 1917E, 1129, this court says:

"Mere technical objections to the wording of the court's instructions do not meet with the favor of this court. The judgment of conviction will not be reversed

on the ground of misdirection of the jury unless in the opinion of this court, after the examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right of the defendant."

We are of the opinion that, while there are errors and informalities in the instructions, they are not important. They fall under the harmless error statute (Comp. St. 1921, § 2822).

And, finally, the defendant complains that the court erred in admitting in evidence certain cash letters, not properly identified, and in admitting in evidence the liquidating report of the bank commissioner purporting to show the assets and liabilities of the bank without having been properly identified and verified. In this case, after the indictment was returned and before the date of trial, the books, records, and papers of the bank were taken from a private vault in the bank building by some interested person, and the state was unable to produce them. Proper proof was made of the loss of the books, records, and papers. The original cash letters were identified by the cashier of the Federal Reserve Bank, which issued the letters, and the liquidating report of the bank commissioner, made by two of his deputies, was identified, and testimony was offered to show that the report contained a true and accurate statement of the affairs and accounts of the bank. In the case of Missouri, O. & G. R. Co. v. West, 50 Okla. 521, 151 Pac. 212, the Supreme Court of this state laid down this rule:

"The general rule admitting secondary evidence is that there must be a showing that the primary evidence is lost, or destroyed, or otherwise unavailable, through no fault of the party making the offer. * * *"

In the case of White v. State, 36 Okla. Cr. 57, 252 Pac. 455, the court says:

"Under the provisions of section 5115, Revised Laws 1910, the official reports and records of the State Examiner and Inspector, in so far as they pertain to the issues involved, may be introduced as primary evidence, subject to explanation or impeachment. Speculative surmises and strained deductions appearing in the report not warranted by the facts shown in the report, when called to the attention of the court, should be excluded."

This court has frequently held that the party offering proof shall offer the best evidence of which the case in its nature is susceptible, and the state did that in this case. Both the state and defendant were represented by able counsel. Every legal proposition was hotly contested; the record consists of three large volumes and contains more than 1,725 pages of evidence and record. It would not be surprising if error should creep into such a record, but after a careful examination of the whole record the court is of the opinion that no substantial error of law was committed.

This crime was committed on the 15th day of January, 1923, and more than six years have gone by since the commission of the crime and more than five years since the return of the indictment. The defendant was a man of business, social, and political power, and it has taken a long time to bring the case to a close. Cases of this kind show the crying need of a reform in the judicial procedure of the state to the end that accused may be put quickly to trial and acquitted if innocent and punished if guilty. Such delay in the administration of justice tends to create disregard for the law and defeat enforcement of the law.

An examination of the entire record shows that the defendant had a fair trial, that he is guilty of the offense

charged, and that no substantial errors in the admission of evidence, or in the giving of instructions, were committed by the court. The case is therefore affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.