Russell GLASS, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12895.

Court of Criminal Appeals of Oklahoma.

March 15, 1961.

Rehearing Denied April 19, 1961.

Cooper & Upchurch, Barney & Pain, Anadarko, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., Githen K. Rhoads, Sp. County Atty., Lawton, for defendant in error.

BRETT, Judge.

This is an appeal by Russell Glass, plaintiff in error, defendant below. He was charged by information in the district court of Caddo County, Oklahoma with the crime of changing a county primary election ballot, while he was acting as an election counter at a polling place, in violation of 26 O.S.1951 § 473.

The offense was alleged to have been committed in the aforesaid county on July 22, 1958. Defendant was tried by a jury, found guilty and his punishment fixed at one year in the penitentiary. Judgment and sentence was entered accordingly, from which this appeal has been perfected.

This action is one of first impression in this State, and was brought under the provisions of 26 O.S.A. § 473, the pertinent part of which reads:

"Whoever wilfully and wrongfully shall * * * deface, mutilate or change any general or primary ballot, * * * shall, upon conviction thereof, be punished by imprisonment in the penitentiary not less than one year nor more than five years, or by imprisonment in the county jail not less than three months, nor more than one year."

The charging part of the information reads:

"* * * that on the 22nd day of July, 1958, * * * one Russell Glass * * * did * * * commit the crime of changing a primary election ballot * * * contrary to the provisions of Title 26, O.S.1951 § 473, in the manner and form as follows, to-wit:

"That is to say that the defendant on the 22nd day of July, 1958, was a duly appointed election counter in Ward 1, Precinct 1, in the city of Anadarko, Oklahoma, having been so appointed by the election officials of said precinct, * * * did knowingly, * * * and *felonisouly* change a primary election ballot, while acting as said election counter, contrary to the provisions of Title 26 O.S.1951, § 473 in the following manner and form, to-wit:

"That there was a county ballot cast in said precinct where the elector did not vote for either Ellis Grissom or Wendell Brisco, who were Democratic candidates for nomination to the office of court clerk of Caddo County, Oklahoma; that the said defendant marked and changed with pen and ink the said ballot to show that said elector voted for Ellis Grissom, when in truth and fact the elector did not vote for either candidate, thereby changing the said elector's ballot, * * *."

To the charge the defendant entered his plea of not guilty, and, further, that he was not guilty because he had already been convicted of the offense charged by information, and judgment of the district court of Caddo County in case No. 3263 rendered on January 8, 1959.

The substance of the information in case No. 3263 is:

"That there was a State ballot cast in said precinct where the elector did not vote for either Toby Morris or Victor Wickersham, who were Democratic candidates for nomination to the office of Congressman for Congressional District No. 6 of the State of Oklahoma; that the said defendant marked with pen and ink the said ballot to show that said elector voted

for Toby Morris, when in truth and fact the elector did not vote for either candidate, thereby changing the said elector's ballot, * * *."

Briefly, the facts as reflected by the casemade are as follows:

The alleged change in the primary ballot here involved occurred in precinct No. 1 of Ward No. 1 in Anadarko, Caddo County, Oklahoma. Exhibit No. 5, a county ballot, is the ballot upon which this charge is based. It appears that the voter casting that ballot did not vote for either Ellis Grissom or Wendell Brisco, both seeking election to the office of Court Clerk of Caddo County, Oklahoma. It further appears that the person casting that county ballot did vote for one of the candidates running for sheriff of the county by using the rubber stamp [X] provided at the polls for that purpose. The voter failed to vote for either candidate for State Representative.

Some time in the afternoon it was discovered by the inspector that some of the ballots had been improperly strung by a counter. In correcting this error, it was discovered by Mrs. Etta Mingus that other ballots had been marked as in Exhibit 5 for various candidates with a pen [X] marked opposite said candidates' names. It was thereafter discovered that 24 other ballots had also been so marked by a pen [X] for various candidates where the party voting for other candidates stamped an [X] with the rubber stamp for some offices and failed to exercise a choice for some of the candidates seeking other offices.

Mrs. Mingus' suspicion being aroused, she called the secretary of the county election board, who called Mr. Winters, secretary of the State Election Board, and he in turn called Mr. Steele Westbrook of the State Crime Bureau. The two latter persons immediately left Oklahoma City for Anadarko to investigate the situation.

The election was conducted by Mrs. Mingus as inspector, the judge, clerk and four counters. The record discloses that no outsider had access to the ballots from the time they were delivered to the voters until they were dropped into the ballot box. An adequate supply of rubber stamps and ink pads were on hand at the polls. It is not an unreasonable presumption that the respective voters would not accept ballots that had already been partially voted, either by rubber stamp or by pen. It is also reasonable to presume that if they had been provided such a ballot, the matter would have been called to the attention of the inspector. After the ballots were cast and placed in the ballot box, no one had access to the ballots until the inspector, the judge and clerk produced their three keys and opened the three separate locks on the box, and poured the ballots out onto the table in the counting room.

The counters, in the presence of each other, sorted the ballots into federal, state and county stacks. The defendant thereafter was the first to have access to the ballots. He called them off to the two tally-sheet counters, and then handed the ballots to the counter, who strung them on a string by means of a needle. The record discloses that the eyes of the tally-sheet workers were almost constantly fixed on the tally-sheets during the ballot call. It further shows that because of the position of the stringer, she had to look over the shoulder of Mr. Glass. None of the workers saw the defendant mark any of the 25 pen-marked [X] ballots for Ellis Grissom.

After the poll closed at 7 P.M., the record shows that Mr. Winters, Secretary of the State Election Board, the county election board secretary and Mr. Westbrook came into the polling place and impounded the 25 changed ballots, and seized the fountain pens of the four counters. They were marked, identified and traced as by law provided, and accounted for so that there was no question as to the pens offered in evidence being those of the counters in the counting room, and the ballots seized and impounded being those tampered with in the election here involved. The pens were all distinguishable from the defendant's pen as to color and markings.

Mr. Winters testified that after the polls closed he and Steele Westbrook confronted the defendant, and that "He [defendant] told us he would tell us about it, if we wouldn't tell the newspapers about it. He said he would tell us he made the marks if we'd promise not to do anything about it." This, Mr. Winters said, they declined to do. Then he testified that defendant said in substance that, "I would be foolish and in worse shape then I am now to say anything about it."

The evidence of defendant's guilt is circumstantial, except for his identity being established by means of his plea of guilty in case No. 3263, district court of Caddo County.

In case No. 3263 defendant was charged by information with the offense of having changed the ballot of a voter who elected not to express a choice as between Toby Morris and Victor Wickersham for Congress of the United States. The record discloses that in that case Judge Eubanks, an alternate judge, was brought into the county to first hear the matter on the plea of guilty. The then county Attorney recommended a suspended sentence. Judge Eubanks indicated he would not follow the recommendation. Defendant then requested leave to withdraw the plea, which was granted. Later another judge was brought in, and he followed the recommendation, and imposed a sentence of one year in the county jail, suspended on good behavior. The judgment and sentence in case No. 3263 was admitted in evidence over objection as to its competency.

The marks on the ballots were examined by Mr. Bob Travis, qualified as an expert handwriting examiner. He took specimens of the "X"s made by the defendant for comparison purposes, and compared them with the "X" marks made on the ballots. He used photographic enlargements to demonstrate that the pressure, width, and measurements of the ink rolled on the paper marked by the defendant's pen was the same as that on the pen-marked ballots. That the similarity in the specimen "X"s and the ballots corresponded as to ball measurements, and that there was identical indentation on both the ballots and the specimens. The exhibit No. 2, the defendant's pen, was the only pen that corresponded in ball point measurement to the pen marks on the ballots, thus eliminating the other three pens as to the pen of infraction. He testified the specimens of the defendant's "X"s made with his pen, and Exhibit No. 2, were made by the same pen and hand that marked the 25 ballots in question, including Exhibit No. 5, marked by pen for Ellis Grissom, said ballot being the basis of this prosecution.

Mr. P. L. Wood, state chemist, after having qualified as an expert, testified that he subjected the 25 ballots to the following enumerated chemical tests:

He made a long-wave ultraviolet lamp test, which determined fluorescence or absorption that the ink marks may have left. They were then examined under a microscope and compared with the known markings (that is the defendant's specimens) to determine the similarities that might be present. Thus he concluded that the same pen made all the marks on the 25 ballots.

He took ink samples from 16 ballots selected at random from the 25, and through spectrophotometric examination determined that the ink on all of the 16 ballots came from the same source.

He then took ink from the four pens, and tested them spectrophotometrically and found that the ink on these ballots came from Exhibit No. 2, defendant's pen, and he concluded only the ink from the defendant's pen marked the 25 ballots.

Ink from pen No. 1 did not bear such similarity that it could have made the marks on the ballots, so also with pen No. 3. The ink in pen No. 4 was the one that had any similarity to the ink in pen No. 2, but it was excluded because the ink contained a tint of yellow not found in the other inks. By this process of examination, and elimination, the chemist concluded that pens, exhibits Nos. 1, 3 and 4 could not have made the "X"s on the ballots

5 to 29 inclusive, and that they could only have been made by Exhibit 2, defendant's pen.

The defendant's evidence was a denial of the charge. He contended he plead guilty in case No. 3263 only that he might get the matter behind him, and avoid prosecution on the 25 separate charges.

The defendant made a written statement in which he denied any guilt in the case. He also denied that he had a conversation with Mr. Winters and Mr. Westbrook in which he impliedly admitted that he had tampered with the ballots.

The defendant testified that he got this pen as a souvenir from a local bank, and the banker corroborated the fact, and further stated they had given away several hundred such pens. But the only pen of that description in the counting room in the polling place was the one possessed by the defendant.

■■■ On the foregoing evidence the case was submitted to the jury. It presented a factual situation entirely for the jury's determination. Sadler v. State, 84 Okl.Cr. 97, 179 P.2d 479. The defendant contends that the evidence is as consistent with the theory that no crime was committed as it is that a crime was committed. With this we cannot agree. The evidence sustains the jury's verdict, even though it was largely circumstantial. Direct and positive proof is not essential to to establish the corpus delicti, and it may be proven by circumstantial evidence. Pettigrew v. State, Okl.Cr., 346 P.2d 957; Osborn v. State, 86 Okl.Cr. 259, 194 P.2d 176, 178; Davis v. State, 57 Okl.Cr. 367, 48 P.2d 339. The evidence is not as consistent with innocence as it is with guilt. It is consistent only with the defendant's guilt.

■■■ This evidence herein clearly established the fact of the crime charged, of changing a voter's ballot, and the plea of guilty in case No. 3263 established identity of the defendant in this case. These facts, as well as other evidence and circumstances of other ballot changes

pointed conclusively to defendant's guilt. Evidence of other offenses is admissible to establish scheme, plan, identity, etc., Wollaston v. State, Okl.Cr., 358 P.2d 1111; Rhine v. State, Okl.Cr., 336 P.2d 913, and Brown v. State, Okl.Cr., 274 P.2d 779; and where the offenses are so closely related to each other that the proof of one tends to establish the other. Smith v. State, 83 Okl.Cr. 209, 175 P.2d 348.

■■■ The defendant's next contention is that the plea of guilty in case No. 3263 bars this prosecution on the grounds that the defendant has once been in jeopardy for this crime, and to hold him guilty herein would violate the constitutional prohibition against twice being placed in jeopardy for the same offense. Art. II, § 21, Okl.Const.; 22 O.S.1951 §§ 14 and 522.

In support of this contention the defendant views the operations herein as one transaction involved in a day's work, but we cannot so view the matter. The language of the statute, 26 O.S.A. § 473, will not permit it to be so viewed. The provisions of this section say, "Whoever wilfully and wrongfully shall * * * deface, mutilate or *change any general or primary ballot* * * *" etc. This language is so clear it will not permit the limited construction sought to be invoked by the defendant. "Any * * * ballot" is susceptible of but one reasonable construction, that is, its protective feature extends to each single ballot cast by each separate voter. The statute is designed to protect the sanctity of each voter's ballot, and to prevent tampering with any and every single ballot, as a separate and distinct offense.

Hence, it clearly appears that changing each of the 25 ballots here involved was a separate act, constituting a separate and distinct offense committed against each ballot. Moreover, the test as to whether the offenses are one and the same is whether the testimony will support both charges. Otherwise stated, the offenses are the same when the evidence adequate to the one in-

formation will equally sustain the other. Estep v. State, 11 Okl.Cr. 103, 143 P. 64. Such is clearly not the case herein, but the defendant assumes the evidence is the same. An information charging the voting of another's ballot for Toby Morris by the violator, instead of for Victor Wickersham, is not susceptible to the same proof as that where the information charges the voting of another voter's ballot where the vote was cast by the violator for Ellis Grissom, instead of for Wendell Brisco, where in each case the voter failed to vote for either of the candidates.

Where as in the case at bar the ballots cast are in relation to different candidates and involve separate and distinct ballots, the charges are not susceptible to the same proof. Such would be true even if in some instances the separate ballots may have been changed for the same candidate on several separate ballots. Herein lies the essential distinction in this case and the cases relied upon by the defendant. Different ballots were involved. The Oklahoma liquor cases cited by defendant in support hereof are neither in point nor analogous. They involve one operation.

We have read Campion v. State, 56 Okl.Cr. 49, 33 P.2d 511, cited by defendant, and it does not concern the question here involved. The same is true of People v. Kennedy, 21 Cal.App.2d 185, 69 P.2d 224; and a careful reading of State v. Carr, 151 Kan. 36, 98 P.2d 393, discloses it too is factually different from the case at bar, and does not involve the principle here under consideration.

State v. Egglesht, 41 Iowa 574, 20 Am. Rep. 612 is not in point with this situation. It involved the presentation for cashing of four forged checks to the same bank teller, at the same time. That constituted but one transaction.

We cannot follow the cases relied upon by the defendant without doing violence to the plain intent and language of the statute (26 O.S.1951 § 473) designed to penalize infractions or changes against *any ballot* of *any individual voter*.

Other cases of similar import cited by defendant do not sustain the defendant's contentions herein. Hence the trial court did not err in overruling the defendant's demurrers to the information and the evidence, for double jeopardy.

The protection sought to be achieved by the statute is against changes in *any ballot,* and where separate ballots are involved, separate and distinct offenses are committed and may be charged in as many informations as there are separate ballot changes. We are of the opinion that no other reasonable interpretation can be made of the foregoing statute (26 O.S.1951 § 473). In our opinion this is clearly the intent of the law. This violation is analogous to the case of Martin v. State, 46 Okl.Cr. 411, 287 P. 424, 426, 85 A.L.R. 512, where the defendant was charged with receiving deposits in an insolvent bank. Martin received the deposit of Nora B. Lupton, for which he was tried and convicted. Thereafter on a change of venue and on a like charge of having received a deposit from R. L. Finney, the plea of double jeopardy was interposed, the deposits being received the same day. The court in refuting this argument said:

"The receiving of a deposit on the 15th day of January, 1923 from Nora B. Lupton, constituted a complete offense. The receiving of another deposit on the same day from R. L. Finney constituted another and separate offense. It is no answer to this argument to say that if the bank received 500 deposits on that day, that the defendant could be harassed, prosecuted, and punished for 500 separate offenses. The general rule is that the former prosecution or acquittal must have been upon a prosecution of the identical act or crime. To sustain the plea of former jeopardy, the offense must be identical in fact and law. The trial court committed no error in sustaining a demurrer to defendant's plea of former jeopardy."

And see the case of Orcutt v. State, 52 Okl.Cr. 217, 3 P.2d 912, 914, where this

Court quoted with approval the case of In re Allison, 13 Colo. 525, 22 P. 820, 10 L.R.A. 790, 16 Am.St.Rep. 224, wherein that court, in the body of the opinion said:

"'Relator was not tried for robbing the stage; each of the indictments charged him with robbing a different individual passenger upon the stage. And no doubt can be entertained but that these various robberies were distinct offenses, although committed at the same place and in rapid succession. They constituted separate acts; but, even if regarded as a single act, they affected separate objects. And, *where one unlawful act operates on several objects, there may be several offenses committed, and so several prosecutions for the same criminal transaction, and an acquittal or conviction for one such offense will not bar a prosecution for the other.'* Fox v. State, 50 Ark. 528, 8 S.W. 836; Whart.Crim.Pl. (9th ed.) § 468 et seq." (Emphasis now supplied.)

And further along in the Orcutt opinion, we said:

"There is yet another test by which it may be determined whether the acts complained of constitute more than one offense; that is the test of evidence.

"\*　\*　\*　\*　\*　\*

"In 16 Corpus Juris, p. 265, § 445, the rule is stated:

"'A test almost universally applied to determine the identity of the offenses is to ascertain the identity, in character and effect, of the evidence in both cases. If the evidence which is necessary to support the second indictment was admissible under the former, was related to the same crime, and was sufficient if believed by the jury to have warranted a conviction of that crime, the offenses are identical, and a plea of former conviction or acquittal is a bar. But if the facts which will convict on the second prosecution would not necessarily have convicted on the first, then the first will not be a bar to the second although the offenses charged may have been committed in the same transaction. If the evidence required to convict under the first indictment would not be sufficient to convict under the second, *but proof of an additional fact would be necessary to constitute the offense charged in the second, then the former conviction or acquittal cannot be pleaded in bar to the second indictment.'*" (Emphasis now supplied.)

These offenses under consideration herein are separated, not only in point of time, but by distinguishment of ballots as well as by definition of statute.

See also Harris v. State, 17 Okl.Cr. 69, 175 P. 627, where this Court said:

"Where the plea of former acquittal shows an acquittal of an offense other than that for which defendant is informed against and placed on trial, the failure of the trial court to submit the issue of former acquittal to the jury under such circumstances was not error.

"The Register of Deeds was required to make monthly report of the fees earned and collected by him, and to pay the same monthly into the county treasury. His failure or refusal so to do (pay all of such fees into the county treasury at the end of each month) constituted an embezzlement on his part, for which crime he was liable to a separate prosecution for each and every month for which he had failed so to account.

\*　\*　\*　\*　\*　\*

"The constitutional provision against a second jeopardy is merely declaratory of the ancient principle of the common law. In application it is limited only to a second prosecution for the identical act and crime, both in law and fact, for which the first prosecution was instituted."

This case (Harris v. State, supra) contains an extensive dissertation on the ques-

tion of double jeopardy—when it does and does not apply, and the Court finally said:

"We reach the conclusion, therefore, that it was not error prejudicial to the substantial rights of this defendant for the trial court to overrule the plea of former acquittal and former jeopardy in this case, and refuse to submit the same as a question of fact for the jury to decide."

 The above conclusion constitutes our answer to the defendant's second proposition, to the effect that under a plea of former jeopardy defendant was entitled to have the question submitted to a jury and that the court erred in refusing to instruct on the issue of former jeopardy. In such cases, fear of the law alone gives it efficacy, and that cannot be provided by minimizing its effects. To hold otherwise places a premium on violations and would encourage commission of this crime, and provide a modicum of protection for the perpetrators. This would be contrary to our paramount duty to suppress crimes, protect society and punish law violators. Our paramount duty is to construe the laws so as to promote this purpose. Lott v. State, 92 Okl.Cr. 324, 223 P.2d 147. In no other way can that purity of each and every ballot be attained than through full force of the law. We know of no more nefarious method to control a close election than the method employed herein. No greater breach of the election trust can be committed than was consummated in this case. An embezzler placed as a custodian in the counting house under the guise of trustworthiness steals the employer's substance. While in this instance an official believed to be trustworthy breaches his trust,—desecrates the individual freedom of choice, or the voter's right to express no choice at all, and through his corruption at the ballot box strikes a vicious blow at the very vitals of free government by changing ballots, thus impinging his choice on the individual's sacred right of suffrage. It was a left-handed way of stuffing the ballot box for people of his choice, hoping that it would not become apparent that there were more voters than there were ballots cast. This cannot be tolerated in fair elections. No more sacred duty is intrusted to the courts than that of assuring, through strict law enforcement, purity of the ballot.

The defendant's further proposition is that the trial court committed reversible error in permitting the State to go into the fact that defendant had first entered a plea of guilty in case No. 3263, then was granted leave to withdraw the plea when the judge presiding at the proceeding would not enter a suspension of sentence.

The cases cited on this point by defendant are all cases where the plea of guilty had been withdrawn, and was sought to be used as evidence against the defendant on the subsequent trial of the case on the merits. We have no such situation here. The plea of guilty in case No. 3263 was withdrawn and at a more propitious time and before a more favorable judge, another plea of guilty was again entered. The matter of the plea being withdrawn while not competent herein, comes as an anticlimax to the later plea of guilty upon which the defendant was found guilty and suspended sentence was imposed. In face of this plea and finding of guilt, evidence as to the former withdrawal of plea of guilty was certainly harmless error, particularly in view of the fact that counsel for the defendant first opened up the matter in cross-examination of Mr. Leo Winters, witness for the State, which the record shows was thereafter pursued with great fervor by defense counsel, in explaining why the first plea of guilty before Judge Eubanks was entered by the defendant, which plea was withdrawn and the plea of guilty before Judge Caldwell was thereafter entered. The plea of guilty in case No. 3263 with the resulting suspended sentence was established by competent proof by the State, and more thoroughly established by introduction of other records by the defendant, and his extensive explanation of the matter both in chief and on cross-examination. The incompetent evidence as to why the plea was entered, and as to other incidental matters under these

conditions, was harmless error. Ford et al. v. State, 23 Okl.Cr. 46, 212 P. 444, wherein this Court said:

"Before this court is authorized to reverse a judgment of conviction because of the improper admission of evidence, it is necessary that the court, after consideration of the entire record, must be of the opinion that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right of the defendant.

"Where incompetent evidence is permitted to go before the jury, and such facts are otherwise proved in a competent manner, the error occasioned by the admission of the incompetent evidence becomes harmless."

It has been repeatedly held that counsel may not through their questioning invite error and then later complain of such evidence. Logan v. State, 95 Okl.Cr. 76, 239 P.2d 1044.

In a similar situation in Johnson v. State, 70 Okl.Cr. 270, 106 P.2d 149, 154, the late Judge Doyle said:

"The testimony of the witness Elliott complained of, it appears, was brought out on cross-examination and was given in response to questions by counsel for the defendants. It related to other purported offenses, and was incompetent, irrelevant and prejudicial to the defendants. However, it was invited error of which they have no right to complain."

And see Radney v. State, 36 Okl.Cr. 240, 253 P. 913.

Thus it becomes apparent that this point is not well laid.

Finally, defendant contends that the enlarged photograph of markings on ballot, State's Exhibit 20, in case No. 3263, was not material to this prosecution and constitutes reversible error. This contention is not well grounded. As we have already indicated, this exhibit, together with the other ballots marked with pen, were all admissible to establish intent, absence of mistake or accident, the defendant's identity, scheme or plan of these closely related crimes, wherein proof of one tended to establish the other. Lewis v. State, Okl. Cr., 335 P.2d 654, wherein we held in admitting such evidence factors, including time, method and similarity must be taken into consideration. Thus these essentials to admissibility of this evidence, here complained of, make it clearly admissible. Walker v. State, 92 Okl.Cr. 256, 222 P.2d 763. In addition to these cases, it is also admissible under the authority of Wollaston v. State, supra, Smith v. State, supra, and Rhine v. State, supra.

The defendant's last proposition is covered in what we have considered as proposition number one, in relation to the sufficiency of the evidence.

For all the foregoing reasons, the judgment and sentence is accordingly affirmed.

NIX, P. J., and BUSSEY, J., concur.