William Frank PARKS, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14609.

Court of Criminal Appeals of Oklahoma.
July 9, 1969.

J. L. Pazoureck, Public Defender, for plaintiff in error.

Virgil R. Ball, Dist. Atty., George S. Turner, Asst. Dist. Atty., for defendant in error.

BUSSEY, Judge.

William Frank Parks, hereinafter referred to as defendant, was charged by Information in the District Court of Canadian County, with the crime of Robbery With Firearms After Former Conviction of a Felony. The case came on for trial on October 30th and 31st, 1967, and the jury returned a verdict finding the defendant guilty and assessing his punishment at a term of fifteen years imprisonment. Motion for New Trial was overruled and judgment and sentence was imposed in accordance with the verdict of the jury on November 6, 1967. From said judgment and sentence a timely appeal has been perfected to this court.

The State alleged that the defendant, acting conjointly with one Ronald Paul Maynard, did rob one Terry Kimsey, taking certain money and property of value, said robbery being accomplished by menacing Terry Kimsey with a chain and a .22 revolver.

The victim of the robbery, Terry Kimsey, testified that on the evening of November 19, 1966, about 10:15 or 10:30, he and Allen Travis were parked, with their dates, on a river road on the Canadian River, north of Lake Overholser in Canadian County. He testified they had been there only a short while when another car drove up and two males got out of the car and walked up to their car. Kimsey and Travis got out of their car and after a brief exchange, one of the men pulled a gun and ordered Kimsey and Travis to get up against their car and put their hands on the hood. Kimsey identified the man with the gun as the defendant, William F. Parks. The other man hit Travis on the back with a chain, and told him to get against the car. When they were against the car with their backs to the men, one of the men shot the gun over their heads. Parks then proceeded to take the billfolds from the back pockets of Kimsey and Travis. The other man opened the hood of Kimsey's car and removed some wiring. The defendant and his companion then drove off in their white-over-blue 1959 or 1960 Chevrolet. Kimsey and Travis got back in their car and tried to follow the defendant to obtain a license number. The defendant's car stopped, turned around, and passed Kimsey's car, when they shot at the victims with their revolver a second time. Kimsey testified that he could not identify Park's accomplice, and further testified that his billfold contained about $20.00, his driver's license, social security card, and some pictures.

Allen Travis testified substantially in accord with Kimsey's testimony, but he stated that he could not positively identify the man who had the gun. He testified that the men took his billfold which contained $16.00, and his identification cards.

Robert Schlittenhardt testified he was an employee of Chapman's Food Market in Oklahoma City and on November 21st or 22nd, 1966, the defendant cashed a $20.00 money order made payable to Terry Kimsey and that the defendant presented identification cards of the said Terry Kimsey.

Howard Cooper testified that he was a postal inspector working for the United States Post Office. He stated that in the course of his duties he came into possession of a $20.00 postal order cashed at Chapman's Food Market in Oklahoma City in November, 1966. He stated he sent the money order to Mr. George Vollertsen at the Postal Service Laboratory in Chicago, Illinois. The money order was later returned by Mr. Vollertsen to the witness. The witness identified the money order as being the one he had sent and received from Mr. Vollertsen.

Mr. Schlittenhardt, the employee of Chapman's Food Market, was recalled to testify and he stated that the money order identified by Mr. Cooper was the same that he had cashed on an earlier date.

Mr. George Vollertsen was called as a witness and testified that he was an examiner of questionable documents for the Postal Inspection Service in Chicago, Illinois. He testified that part of his duties involved the examination of documents for fingerprints. He stated he had previously examined the money order and found fingerprints of Paul Maynard (the person with whom the defendant was charged conjointly in committing the robbery). At this point the defendant objected to the testimony, which objection was sustained and the court instructed the jury to disregard the testimony of Mr. Vollertsen and to not consider it in any way.

The defense called two witnesses, Robert John Barnes and Bobby Woods, both of whom were working at the VFW Club at Tenth and North Blackwelder in Oklahoma City on November 19, 1966. Both witnesses testified that they saw the defendant along with Paul Maynard at the VFW Club on the night of November 19, 1966. Woods testified he saw the defendant around 10:00 p. m., and Barnes testified that he saw him sometime after 9:00 p. m.

On appeal we shall first consider the apparent challenge of the defendant to the propriety of the trial court in allowing the State to introduce the testimony of

Robert Schlittenhardt regarding the defendant cashing a $20.00 postal money order made payable to the victim of the robbery, Terry Kimsey. Schlittenhardt testified that the defendant used two identification cards showing that he was Terry Kimsey. It seems readily apparent that the State introduced the evidence in question not to show that the defendant committed another offense, i. e. Forgery, but to show that defendant had in his possession a fruit of the crime, that being the identification cards of the victim. When the defendant cashed the money order and presented the victim's identification cards, this was, in essence, a culmination of his act of robbery, and evidence of that event. The fact that within two days of the robbery the accused had in his possession the identification cards bearing the victim's name, taken at the time of the robbery, would certainly go to corroborate his testimony and to identify the defendant.

In Grimes v. State, Okl.Cr., 365 P.2d 739 (1961), this Court held:

"It is firmly established in the law that evidence of different offenses from the one charged are admissible when both offenses are so closely linked as to form a part of the res gestae. Jackson v. State, 42 Okl.Cr. 86, 274 P. 696; Doser v. State, 88 Okl.Cr. 299, 203 P.2d 451–464, citing numerous authorities to support the closely linked theory for admissibility of evidence." 365 P.2d, at 748.

In Smith v. State, Okl.Cr., 291 P.2d 378 (1955), this Court held:

"It is true the testimony to which objection is made may have had a tendency to indirectly connect appellant with another crime, yet that fact alone would not deprive the State of the right to show how the appellant might have become possessed with the check. [citations]" 291 P.2d at 380.

In Glass v. State, Okl.Cr., 361 P.2d 230 (1961), this Court held:

"This evidence herein clearly established the fact of the crime charged, of changing a voter's ballot, and the plea of guilty in case No. 3263 established identity of the defendant in this case. These facts, as well as other evidence and circumstances of other ballot changes pointed conclusively to defendant's guilt. Evidence of other offenses is admissible to establish scheme, plan, identity, etc, [citations] and where the offenses are so closely related to each other that the proof of one tends to establish the other." 361 P.2d, at 236.

We therefore conclude that there was no error in the trial court in admitting evidence regarding the defendant's cashing a postal money order two days after the robbery, with identification cards bearing the victim's name.

It is defendant's further contention that the trial court improperly admitted the testimony of George Vollertsen and that his testimony so prejudiced the jury as to constitute error and require a mistrial. It appears that the State introduced testimony of Vollertsen in an effort to connect Paul Maynard with the robbery. The defendant was charged conjointly with Maynard, although he was being tried alone. After a portion of the witness Vollertsen's testimony was offered, the court sustained the objection of the defendant that the prosecution had not properly laid a foundation for the testimony, and therefore the court admonished the jury to disregard the testimony of that witness.

■ We do not find this testimony so objectionable as to require reversal, especially since the objection of the defendant was sustained and the jury admonished to disregard it, relying on our holding in Green v. State, 54 Okl.Cr. 450, 23 P.2d 506:

"An examination of the record discloses that the court sustained objections to the first evidence complained of and admonished the jury not to consider the same. In view of the fact that the ruling was favorable to defendant, there is no error presented to this court with respect to that part of the evidence." 23 P.2d, at 507.

There may be instances where the evidence offered was so flagrantly prejudicial that an admonition to the jury would be insufficient; however, that is not true in the instant case since the testimony stricken was that regarding fingerprints of the co-defendant on the postal money order.

It is defendant's further contention that some of the jurors had a preconceived idea of defendant's guilt. The defense counsel brought to the court's attention, during the trial, that he heard one of the female jurors say to another, "I think he's guilty, don't you?" The defense now asserts that "jurors" had a preconceived idea of guilt. Immediately after defense counsel mentioned the alleged remark to the court, and moved for a mistrial, the court proceeded with the consent of the defense to question each of the female jurors as to any impropriety. Each of the jurors questioned denied having made the alleged statement, or having heard it. It also appears that the defense counsel admitted that it might not have been a juror that made the statement.

■ It is incumbent on the defense to show some actual misconduct before they can allege error. Particularly is this true when the alleged misconduct occurs prior to the submission of the case to the jury. In several cases where it appeared that a juror, prior to submission of the case, had contact with persons other than jurors during recess, this Court has held that there must be a showing that the defendant was prejudiced thereby before it could constitute misconduct of a prima facie nature. Townley v. State, Okl.Cr., 355 P. 2d 420, 431 (1960); Smith v. State, 19 Okl.Cr. 14, 197 P. 514, 39 Am.Jur. § 100, p. 114.

■ In the present case the trial court promptly and wisely acted to determine whether or not there was any misconduct on the part of a juror; and after he was assured that there was not, he overruled the motion of the defendant for a mistrial.

Accordingly, we find that the action of the trial court was prudent and without error in this regard.

■ Defendant further contends his prosecution by information rather than by indictment returned by a grand jury as required by the Fifth Amendment of the United States Constitution, was error. This argument has been raised before in this Court on numerous occasions and it has consistently been held that in Oklahoma, the prosecution may be by indictment or information, and a prosecution by information does not violate the Fifth or Fourteenth Amendments of the United States Constitution. See Sisson v. State, Okl.Cr., 426 P.2d 379 and Cody v. Page, Okl.Cr., 447 P.2d 466.

■ Defendant further contends, in a supplemental pro se brief filed herein, that he did not receive adequate representation by counsel. Defendant's allegation is completely without foundation and we find nothing in his brief, or in the record, to substantiate this claim. The burden is on the defendant to show how his counsel was inadequate in his representation. As this Court has stated before, an unsupported allegation of inadequate counsel is insufficient to show the counsel made the proceedings against an accused a farce and mockery of justice, shocking to the conscience of the court, which is necessary to support a charge of inadequate legal representation. See Goodwin v. Page, Okl. Cr., 444 P.2d 833 and Barnett v. State, Okl.Cr., 446 P.2d 89.

Having carefully considered the record and the contentions of error, we find that the evidence supports the judgment and sentence, and finding no merit to the assignments of error, we are of the opinion, and therefore hold, that the judgment and sentence appealed from should be, and the same is hereby, affirmed.

BRETT, P. J., and NIX, J., concur.