**Jack Theodore WHITE, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 501-70.**

United States Court of Appeals,
Tenth Circuit.

July 6, 1971.

Rehearing Denied Aug. 17, 1971.

Gerald G. Cunningham, Denver, Colo., for appellant.

Stephen K. Lester, Asst. U. S. Atty., Wichita, Kan. (Robert J. Roth, U. S. Atty., with him on the brief), for appellee.

Before HILL and McWILLIAMS, Circuit Judges, and BRATTON, District Judge.

BRATTON, District Judge.

This is an appeal from the conviction of Jack Theodore White upon five counts of transporting forged securities in violation of 18 U.S.C. § 2314.

The questions presented for decision on appeal are whether the warrantless search of White's motel room was conducted in violation of his Fourth

Amendment rights and whether his confessions were involuntary because triggered by the evidence garnered in the allegedly illegal search.

Appellant was arrested in Mt. Clemens, Michigan, on April 17, 1969, for breaking and entering a building in a shopping center complex. He had been observed late at night by the owner of a business in the area and who had notified local authorities to come to the scene.

Upon the arrival of the police, appellant ran away from the scene, leaving behind his automobile. Police were able to observe on the front of the car a matchbook from a local motel. A check was made at the motel desk, and the police learned that a man answering the description of appellant and driving a car like the one left near the shopping center was registered there, together with his family, under the name Frank Miller.

Two police officers then went to the room assigned to the Millers and knocked on the door. A young woman answered the door and, in response to their question, identified herself as Mrs. Miller. She told them that her husband was not there and asked if anything was wrong. The officers replied that they just wanted to speak to him.

They left the scene, but returned about 2:00 A.M. to stake out the motel unit where the Millers were staying. Shortly thereafter, the appellant was seen entering the unit.

After radioing headquarters, the officers immediately knocked at the door and, as they waited for it to be opened, they heard a window opening inside. One of the officers ran to the side of the building and observed appellant escaping. The second officer, who had stayed by the front door, joined him, and they unsuccessfully combed the surrounding area for appellant.

The two returned then to the motel unit, where the young woman they had previously talked to answered the door in response to their knock. They were joined by other officers and detectives, and apparently a search of the motel room was undertaken. Nothing was discovered during this period.

Two police detectives next arrived. They, too, knocked at the door and were met there by the young woman. They showed her their credentials, were admitted and read the Miranda warning to her. One of the officers asked her if they could search the room. She readily replied that they could, adding, "I have nothing to hide." The officers did not discuss Fourth Amendment rights with her.

The search then conducted uncovered a small cloth bag containing, among other things, travelers checks and false identification subsequently used against appellant in the trial of the present case.

The appellant was apprehended in the early morning hours, when he attempted to return to the motel.

He gave a statement later that morning, admitting the theft and passage of various travelers checks under assumed names. Before his statement, he was given the Miranda warning, and he was shown, at the time of his statement, the evidence taken from the motel room.

He admitted the offense in two subsequent statements, also, each time after having received the Miranda warning.

The case was tried to the court, and the facts related above were adduced, the court reserving its ruling on the legality of the search until the conclusion of all the evidence. In addition, it was disclosed that the young woman, now identified as Anna Atkinson, was not White's wife, although she had had one child by him and was eight months pregnant with another at the time of the search. Further, it was revealed that she was twenty-one years old and that she had lived with White and traveled across the country with him, holding herself out as his wife and using whatever name he was using at the moment, for more than three years.

The defense argued below, as it does here, that Anna Atkinson's consent was, under the circumstances, coerced, and that, in any event, she had no authority to consent to the search of White's cloth bag. The illegal search, it is contended, triggered the confessions, so that they, too, were inadmissible against White.

■ On the issue of whether Atkinson's consent to the search was knowingly and voluntarily given, we have no hesitancy, on the basis of the record, in upholding the trial judge's finding that it was. Existence and voluntariness of a consent to search and seizure is a question of fact to be decided in light of attendant circumstances by the trier of facts, United States ex rel. Harris v. Hendricks, 423 F.2d 1096 (3rd Cir. 1970), and will not be overturned on appeal unless clearly erroneous. The judge believed the officer's testimony on this point and thought that she was not inexperienced and knew what activities White was engaged in, so that she readily consented to the search in order to protect herself by showing in this manner that she was not involved. The record amply supports his reasoning. That she was not advised of her right under the Fourth Amendment to refuse permission is not persuasive, for no such specific warning is necessary. United States v. Goosbey, 419 F.2d 818 (6th Cir.1970).

■ This leaves the question, irrespective of the voluntariness of Atkinson's consent, whether she had the power or authority to consent to a search of the room and its contents, particularly the cloth bag.

The court below found that Atkinson did have the authority to consent to a search of the room and its contents, and the appellant here concedes that she had the power to authorize a search of the room generally. What appellant does not concede is that her authority extended to permitting a search of the zipper bag, contending that he had exclusive control over this piece of property capable of itself being searched.

Appellant places heavy reliance on United States v. Poole, 307 F.Supp. 1185 (E.D.La.1969), to support this argument. That case, however, is distinguishable from the present case. In this case the consenting party is a young woman who jointly occupied and had possession of the premises and who held herself out as appellant's wife. We believe that the rule that a wife may give consent to search premises that she has a right to use and occupy equal to that of her husband, United States v. Thompson, 421 F.2d 373 (5th Cir.1970), extends to the present circumstances and is equally applicable to the search of the zipper bag. This is a different situation than that of the overnight guest in the *Poole* case, *supra*, particularly in view of the fact that Atkinson was left by appellant in complete charge of the motel and its contents, that she held herself out as his wife to the officers, and that she neither objected to the search of the bag nor indicated to them in any way that it was exclusively appellant's property. See Gladden v. Frazier, 388 F.2d 777, 783 (9th Cir.1968).

Accordingly, her authority did extend, in the present circumstances, to a search of the zipper bag.

This disposes of appellant's contention that his confessions were involuntarily triggered as the fruits of an illegal search, and it need be discussed no further.

Affirmed.