**Michael L. PENNINGTON, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–93–968.

Court of Criminal Appeals of Oklahoma.

Dec. 28, 1995.

Rehearing Denied April 26, 1996.

1358

Robert Schulte, Assistant District Attorney, Lawton, for State at trial.

Mark Barrett, Steve Hess, Oklahoma Indigent Defense System, Capital Trial Division, Norman, for Defendant at trial.

William H. Luker, Norman, for Pennington on appeal.

Susan Brimer Loving, Attorney General, William L. Humes, Assistant Attorney General, Oklahoma City, for State on appeal.

## OPINION

JOHNSON, Presiding Judge:

### STATEMENT OF THE CASE

Appellant, Michael L. Pennington, was tried by jury for the crime of First Degree Murder (malice aforethought) in violation of 21 O.S.1991, § 701.7, in Case No. CRF–91–386, in the District Court of Comanche County before the Honorable Peter Clinton Moore. The State filed a Bill of Particulars alleging three aggravating circumstances: (1) the defendant knowingly created a great risk of death to more than one person; (2) the murder was committed for the purpose of avoiding or preventing lawful arrest or prosecution; and (3) that defendant was a continuing threat to society. Appellant was represented by counsel. The jury returned a verdict of guilty and set punishment at death. The trial court sentenced appellant in accordance with the jury's verdict. From this Judgment and Sentence, appellant has perfected his appeal to this Court.

### SUMMARY OF FACTS

On October 21, 1991, James Principe and Bradley Grooms were working the late shift at a 7–11 convenience store located in Lawton at Fort Sill Boulevard and Rogers Lane. At approximately 5:00 a.m. that morning, Principe and Grooms were stocking shelves, with Grooms located toward the front of the store. During this time, a black male entered the store, went to the bathroom, and left. This male was wearing a black and white outfit with matching top and pants. Principe described the pattern as cow-like with black and white spots. About one minute after this male left the store, Principe

while still stocking shelves in the back of the store, heard a loud bang. He stood up from his crouched position and noticed another black man wearing sunglasses standing just inside the door of the store looking in the direction of Grooms. Principe immediately heard Grooms exclaim, "Oh shit." With that, Principe ducked down and made his way to the back of the store.

As he was running, he looked back and saw the man again taking a step towards Grooms. At that point, Principe got a good look at the shooter and noticed he was wearing a black trench coat. As he continued moving to the back of the store, Principe heard another shot. Principe ran to the bathroom and locked himself inside.

While locked in the bathroom, Principe heard several more shots. Then he heard the front door buzzer, and then some voices. He heard the door buzzer again, and then came out of the bathroom and contacted the police. He then observed Grooms laying motionless between the first two aisles of the store. Principe later identified appellant as the black man who did the shooting.

During a canvass of the neighborhood for witnesses, an individual was discovered who could shed some light on what occurred while Principe was hiding in the bathroom and heard the sound of voices. Lynn Renee Smith had stopped at the 7–11, just after the shooting, to get a cup of ice. Coincidentally, she had known appellant for about three years and had seen him earlier that evening at the Peacock Lounge. As Smith pulled up to the store, she noticed appellant behind the cash register. Smith believed that appellant must work at the store. He asked her what she wanted. When she told him, he gave her a cup and she got some ice. She did not see anyone else while she was in the store, and she noticed that it appeared to be unusually quiet. Upon leaving the store, Smith drove to her sister's house located approximately fifty yards from the 7–11 and backed into the driveway. As she looked towards the 7–11, Smith saw appellant, wearing a black trench coat, leave the store and drive away in his car. Smith also testified that appellant was wearing a black baseball style cap, which he

had on backwards. She further noted that he had on sunglasses, which were not mirrored, and described appellant as being about 5'5″ tall. She did not see appellant wearing the black trench coat in the store.

The neighborhood canvass turned up two other witnesses. Sylvia Smith (no relation to Lynn Smith) lived in the neighborhood in the area of the 7–11. Smith heard a gunshot between 4:30 and 5:00 a.m. As she looked out of her window, she saw two black males running up the street away from the 7–11. Jose Rodriguez lived almost next door to Sylvia Smith. He left for duty at Fort Sill about quarter after 5:00 a.m. on the same morning. He stated that he also saw two individuals running. He was unable to describe the second runner, but he was able to recall that the first individual appeared to have on a knee length black coat.

After leaving the store, appellant, who was a soldier stationed at Ft. Sill, returned briefly to the barracks and changed clothes. He then went to the airport and took the next available flight to Dallas with an ultimate destination of Akron, Ohio. Appellant was taken into custody the following day by Ohio authorities at the home of his wife in Akron. While in custody, appellant volunteered information as to the location of the shotgun. The shotgun was located in an orange duffel bag in the basement of the Akron residence along with a green compass pouch containing four shotgun shells. Subsequent ballistics tests conducted on the shotgun revealed that the five expended shells from the scene, and one expended shell found in the orange duffel bag, were fired from the shotgun found in the orange duffel bag. Another search was conducted the next day in the area where the duffel bag had been recovered. This time the police recovered a black baseball style cap, a three quarter length trench coat, and a gray and black sports sweatshirt.

The medical examiner, Dr. Boatsman, testified that the cause of Bradley Groom's death was a shotgun wound to the chest. Twelve pellet wounds were found in the left back and an exit wound in the back right area of the neck. An examination of the scene indicated that nothing was missing from the store after the incident. However, the cash register drawer had been pulled and pried upon, and also apparently fired at, since four large holes were in the front drawer area.

During the homicide investigation, the police had learned that appellant was absent without leave from his unit. They also learned of Priscilla Jordan, who was appellant's girlfriend in Lawton. From Jordan the police discovered appellant owned a shotgun which he kept in an orange duffel bag. With this information the police revisited the personnel at appellant's battery and obtained information that led them to the K–Mart store where appellant had purchased a Maverick Shotgun.

At trial, the defense called appellant. Appellant first described his early life and military career. He also described his problems with the premature birth of his child and his plans to leave the military. The morning of the 7–11 shooting, appellant decided to go home to Akron even though his discharge papers had not yet been processed. He testified, that in order to raise some money, he made a deal to buy some firearms to take home to sell. This deal was entered into with a man known only as "T." Appellant went on to describe his version of how the events unfolded in the early morning hours of October 21, 1991. "T" and two other black males got into appellant's car somewhere near the Peacock Lounge. The group rode around awhile to make sure they were not followed. Eventually they directed appellant to stop near the 7–11 on Fort Sill Boulevard. Appellant parked near a massage parlor and pawn shop close to the store. One of the men exited the vehicle saying he was going to get the stuff.

Some time passed, so appellant decided to go into the 7–11 to purchase some Lactaid milk. He took his $1,500.00 (to purchase the guns) with him, but left his gun behind in the car. He went on to testify that while he was in the store, "T" walked in carrying appellant's shotgun. "T" immediately began firing the gun. With that, appellant jumped behind the checkout counter. Then "T" came behind the checkout counter and told appellant not to worry, but to just give him the money he knew appellant had on him to purchase

the guns. Appellant gave "T" his cash. After that "T" focused his attention on the locked cash register. "T" got mad and shot the cash register several times and tried unsuccessfully to yank it open. After that "T" ran out of the store with appellant's gun.

Appellant states that he remained in the store in a state of shock. He looked over and saw Grooms motionless and assumed he was dead. This is the point at which Lynn Smith entered the store and asked for the cup of ice. After she left, appellant got a grip on himself and ran out of the store. As he was running toward the car he saw his shotgun laying on the ground and picked it up as a reflex action. He then drove off in his car and went back to the post. Appellant stated that he did not call the police because he feared "T" who was a notorious gang member. "T" was never found or identified.

Additional facts will be discussed as pertinent to the assignments of error.

## JURY SELECTION ISSUES

■ In his sixth proposition of error, appellant contends that the trial court deprived him of a fair trial and impartial jury by refusing to sustain appellant's challenges for cause against two jurors. After being accepted for cause, Jurors Cable and Lema indicated that they could not be fair and impartial jurors.

■ As a general assertion of law, the manner and extent of voir dire examination rests within the sound discretion of the trial judge. *Plantz v. State*, 876 P.2d 268, 277 (Okl.Cr.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1130, 130 L.Ed.2d 1091 (1995). The right to challenge any juror for a particular cause is a statutory right which may be waived by the defendant. *Id.* Here, the trial court had the opportunity to personally observe the jurors and their responses. This Court will not disturb the decision of the trial court absent an abuse of discretion. *Id.*

Both sides accepted Juror Cable for cause before the exercise of peremptory challenges. It was after this point that Juror Cable stated "I can't see myself being a fair juror in this particular case." The trial court then said that if both sides would move to reopen voir dire for cause the court would sustain the motion. The prosecutor did not move to reopen and defense counsel replied "I think we should hear what he has to say at least, Your Honor." The court replied "All right. Thank you very much." but did not reopen voir dire. The State submits that the above discussion is evidence that defendant did not actually move to reopen and failed to object to the ruling of the court or request an exception. Furthermore, the defense could have used one of its peremptory challenges to remove Juror Cable if it was truly uncomfortable with Cable serving as a juror.

■ Appellant next alleges that Juror Lema improperly expressed her belief that appellant was guilty to Juror Howard during a recess in the proceedings. The allegations were initially made by appellant's mother and sister.

■ The defense must show actual misconduct on the part of jurors before it can allege error. *Parks v. State*, 457 P.2d 818, 822 (Okl.Cr.1969). Such is particularly true when the alleged misconduct occurs prior to the submission of the cases to the jury. *Id.* The court responded to defense counsel's allegations in the instant case by hearing testimony in chambers from all persons who may have been involved in this matter. Juror Howard testified that she could not recall any statement made by Juror Lema regarding the case. A university student who was there to observe jury members and describe them for a school project was present during the conversation between the two jurors in question. This student testified that she did not overhear any discussion of the case between Jurors Lema and Howard.

Appellant raises two more issues with respect to Juror Lema. We find that Lema did not attempt to hide any information during voir dire and appellant had ample opportunity to question Lema as to any prejudice she might have felt. If the defense found Lema to be unfit to serve as a juror, it could have exercised a peremptory challenge to remove her from the panel. Appellant has failed to demonstrate any prejudice. Therefore, this proposition of error is without merit.

In his seventh proposition of error, appellant claims that the trial court improperly overruled his motion for mistrial. He contends that the manner in which ballots were drawn from the jury selection box contravened the statutorily prescribed procedure and to overrule his motion was reversible error. We disagree.

The Court Clerk substantially complied with the applicable statute and no error occurred. 22 O.S.1991, § 595 provides:

> Before the name of any juror is drawn, the box must be closed and shaken, so as to intermingle the ballots therein. The clerk must then, without looking at the ballots, draw them from the box.

 It has already been determined by this Court that the above quoted statute need not be followed literally to accomplish the purpose of that statute. The ballots may be stirred rather than shaken. *Sam v. State,* 510 P.2d 978, 982 (Okl.Cr.1973), *overruled on other grounds Buis v. State,* 792 P.2d 427 (Okl.Cr.1990). Furthermore, it is not necessary that the box be shaken or tumbled after each ballot is drawn as a mixing of the ballots before the process began results in substantial compliance with § 595. Upon review, we find that the actions of the Court Clerk and the Bailiff substantially complied with the purpose of 22 O.S.1991, § 595. This proposition of error is without merit.

 In his eighth assignment of error, appellant alleges that Jurors Peck and Gerald were improperly excused for cause by the trial court. These jurors were excused even though they stated that they could, despite their beliefs and conscientious scruples against the death penalty, follow the court's instructions and fairly consider all punishment options.

 On review, this Court must look at the entirety of the juror's voir dire to determine if the trial court properly excused the jurors for cause. *Castro v. State,* 844 P.2d 159, 166 (Okl.Cr.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 135, 126 L.Ed.2d 98 (1993). Even if the juror expresses that he could follow the court's instructions or states that he could impose the death penalty, that juror may be excused if his answers, consid-

ered in toto, are wavering, hesitant, or equivocal. *Id.; Romano v. State,* 847 P.2d 368, 377 (Okl.Cr.1993), *affirmed,* —— U.S. ——, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994). As discussed earlier, it is the trial judge who is "in a position to view the facial expressions, voice inflection, and mannerism[s] in answering the questions on voir dire." *Castro,* 844 P.2d at 167 (quoting *Davis v. State,* 665 P.2d 1186, 1194 (Okl.Cr.)), *cert. denied,* 464 U.S. 865, 104 S.Ct. 203, 78 L.Ed.2d 177 (1983).

The fact that both jurors indicated they would try to follow the court's instructions does not outweigh the bulk of their voir dire in which they stated they could not impose a sentence of death. The trial court was best able to determine whether Jurors Peck and Gerald would be able to carry out their duties as jurors. Therefore, no abuse of discretion resulted from the excusal of Peck and Gerald from the panel of jurors. Accordingly, this assignment of error is without merit.

 In his ninth proposition of error, appellant asserts that he was denied an impartial jury because the trial court refused to excuse prospective Juror Brierton. Appellant argues that Brierton's impartiality was demonstrated by a remark he made that he believed capital punishment was the only proper punishment for intentional murder. Appellant's challenge for cause was denied and he used a peremptory challenge to remove this juror.

The State submits that the trial court did not abuse its discretion in refusing to remove Brierton for cause. Brierton unequivocally stated that he would follow the instructions of the court and would consider all punishment ranges. He further stated that he would base his decision on the evidence and would not be influenced by racial or other outside factors. The trial court's actions did not result in error. Therefore, this proposition of error must fail.

 For his tenth assignment of error, appellant contends that the use of a peremptory challenge by the State to remove prospective Juror Jones from the jury was racially motivated and violated his Fourteenth Amendment rights.

In determining whether a jury has been constitutionally selected in a race-neutral manner under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court first held that a prima facie case of discrimination must be established by the defendant. There is a shift in the burden of production after the defendant establishes his prima facie case. The State must then come forward with a neutral explanation of why it utilized its peremptory challenge. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. The trial judge then decides whether the defendant has established purposeful discrimination. *Batson*, 476 U.S. at 98, 106 S.Ct. at 1724. On review, the reviewing court is called upon to analyze the neutrality of the prosecutor's explanation as a legal issue, and the review is only for clear error by the trial court. *United States v. Johnson*, 941 F.2d 1102, 1108 (10th Cir.1991); *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion).

The State provided a race neutral explanation for challenging prospective Juror Jones. The prosecutor stated that there were traffic allegations filed by his office against Jones which may still not have been disposed of and that this juror had previously been removed from a jury because his brother had been recently murdered. However, the prosecutor's primary concern were Jones' views with respect to punishment. The prosecutor's combination of concerns, suggest that the reasons for removing Juror Jones were race neutral. Therefore, this proposition of error must fail.

In his twenty-second allegation of error, appellant contends that his constitutional rights were violated by the operation of 38 O.S.1991, § 28, which allows persons seventy years of age or older to opt out of jury service. This Court has previously considered this exact issue on numerous occasions and concluded that no valid basis exists for such a claim. *See e.g. Bryson v. State*, 876 P.2d 240, 251 (Okl.Cr.1994), *cert. denied*, — U.S. —, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995) (citing prior decisions of this Court denying relief based upon this issue). Appellant has failed to provide any compelling reason for this Court to reconsider its prior decisions or depart from those rulings. Based upon precedent, this proposition of error must fail.

## FIRST STAGE ISSUES

For his first proposition of error, appellant alleges that the trial court improperly admitted into evidence the in-court identification of appellant by the witness, James Principe. Appellant argues that the State failed to show that Principe was basing his identification of appellant at trial on his observation of him at the crime scene. The basis of appellant's argument is that because the pre-trial identification of appellant was unduly suggestive, the in-court identification of appellant by Principe was tainted and should not have been admitted.

In the instant case, the trial court determined that the pre-trial photographic lineup was unduly suggestive. This does not, however, always invalidate a courtroom identification that can be established as independently reliable. *Bristol v. State*, 764 P.2d 887, 890 (Okl.Cr.1988); *Boyd v. State*, 743 P.2d 658, 660 (Okl.Cr.1987). The inquiry, at this point, becomes "whether under all the circumstances, the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification." *Berry v. State*, 834 P.2d 1002, 1005 (Okl.Cr.1992) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 107, 97 S.Ct. 2243, 2249, 53 L.Ed.2d 140 (1977)). Furthermore, in *Berry*, this Court held that a courtroom identification will not be invalidated due to prior suggestive procedures if it can be established that it was independently reliable under a totality of the circumstances. *Id.* at 1005. To determine the reliability of an eyewitness' in-court identification, this Court utilizes a test which includes consideration of all the surrounding circumstances plus the following:

1) prior opportunity of the witness to observe the defendant during the alleged criminal act;

2) degree of attention of the witness;

3) accuracy of the witness' prior identification;

4) the witness' level of certainty; and,

5) the time between the crime and the confrontation.

*Stiles v. State*, 829 P.2d 984, 993 (Okl.Cr. 1992).

The trial court allowed Principe's testimony (as to identification) because it was consistent with his testimony at the preliminary hearing that he saw appellant in the store during the commission of the crime. Principe had the opportunity to view the assailant as he focused his attention upon the source of the shotgun blasts. Principe's identification was further supported by Lynn Smith, a State's witness, who put appellant behind the counter at the 7–11 only moments after the shooting. Furthermore, Lynn Smith stated that appellant was the only person seen leaving the store after she returned to her sister's house some fifty yards from the crime scene. We find, in light of all of the surrounding circumstances, that Principe's in-court eyewitness identification of appellant is reliable. As such the trial court did not abuse its discretion by allowing into evidence the in-court identification of appellant. Furthermore, there was substantial other evidence connecting appellant to the scene of the homicide and the shotgun used to kill Grooms. Accordingly, we find this proposition of error to be without merit.

■■■ In his second proposition of error, appellant contends that the prosecutor's references to his post arrest silence constitute reversible error. Specifically, appellant complains of three instances of alleged impropriety by the State. These references are alleged to have occurred both during the cross-examination of appellant and during the State's case in chief. The State submits that in each instance, no violation of due process occurred. Appellant had either waived his right to silence, the objection at trial by appellant was sustained and error cured, or, in the alternative, any resulting error was harmless.

This Court has stated that, in an instance where no request is made to have the jury admonished nor motion for mistrial or other relief made, there is no authority requiring reversal where the trial judge sustains an objection by the defendant. *Shepard v. State*, 756 P.2d 597, 600 (Okl.Cr.1988). In the instant case, appellant objected after each comment at issue and the trial court sustained the objection. At no time did appellant request that the jury be admonished, nor did he request a mistrial, or any other relief. Additionally, the prosecutor did not pursue the point after the objection in any of the subject instances.

■■■ Generally, a prosecutor may not comment on a defendant's exercise of the right to remain silent. *Lamb v. State*, 767 P.2d 887, 891 (Okl.Cr.1988). However, where a defendant waives his right to remain silent, the rule does not come into play. *Id.* In the first instance, appellant waived his right to silence while at the police station in Akron by initiating contact with police after invoking that right. Further, appellant expressly waived the right during his initial contact with the police in Comanche County.

The Supreme Court has provided the prosecution with some leeway to cross-examine defendants about statements made in court that are materially different from those given the police. *Anderson v. Charles*, 447 U.S. 404, 408–409, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980). In the case at bar, appellant presented at trial a new and dramatic story about a man named "T" who actually committed the murder. As to any alleged error involving the cross-examination of appellant, the prosecution was within permissible limits. Moreover, as stated above, each objection to an impermissible comment or question was sustained.

■■■ Finally, the isolated remarks by the prosecutor at the trial below were not outcome determinative, and any error which may have occurred was harmless. This Court has recently held that plain error will not automatically require reversal and that to warrant reversal, the error must have a "substantial influence" on the outcome of the case. *Simpson v. State*, 876 P.2d 690, 702 (Okl.Cr.1994). Unless there is "prejudice/injury plus", no reversal for plain error is required. *Id.* at 700. Therefore, we find no merit in this assignment of error.

■■■ In his third assignment of error, appellant asserts that the admission of his

statements to police regarding the location of the shotgun after his invocation of the right to remain silent was improper. In addition, appellant asserts that since the statements were improperly obtained, the fruits of that illegally obtained evidence, the shotgun, was also improperly admitted into evidence.

 In the instant case, appellant elected not to speak to police immediately following the reading of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Nothing in the record indicates that the police did not scrupulously honor that request. The crucial issue here is whether or not the authorities violated appellant's right to remain silent under *Miranda*. We find that they did not. Appellant initially exercised his right to remain silent after being taken into custody. However, appellant subsequently waived his right by initiating conversation with police. It was at that point that appellant revealed information that would lead the police to the shotgun and other critical evidence. This Court has recognized such behavior as a waiver of the right to remain silent after receiving *Miranda* warnings. *See Long v. State*, 883 P.2d 167, 172 (Okl.Cr.1994). Furthermore, the law does not require an explicit statement of waiver to support a finding of waiver. *Browning v. State*, 648 P.2d 1261, 1267 (Okl.Cr.1982). Consequently, we find that the admission of the statements was proper.

 Even if the admission of these statements were found to be improper, the shotgun which was discovered at his wife's home was not improperly admitted at trial. The shotgun would have inevitably been discovered even without appellant's statements regarding its location. The Akron police had probable cause to obtain a search warrant. Probable cause existed based upon information given by Lynn Smith. Smith told police officers in Oklahoma City about seeing appellant at the crime scene and gave the officers information that led them to his girlfriend, Priscilla Jordan. Jordan provided information regarding the location of appellant's wife in Akron and appellant's ownership of a sawed-off shotgun that he kept in an orange duffel bag. By acquiring this information

from authorities in Oklahoma and knowing the appellant was absent without leave from Ft. Sill immediately following the crime, the Akron police had probable cause to search the residence and recover the items therein. In addition, the duffel bag containing the shotgun was in plain view, as it was located at the foot of the stairway to the basement in appellant's wife's home. Suppression of this evidence would serve no purpose and its admission at trial was proper. Here the prosecution established at trial that this evidence would have been inevitably discovered by lawful means. This is known as the "inevitable discovery doctrine". *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). Accordingly, this proposition of error must fail.

Appellant's fourth proposition of error alleges that the warrantless seizure of certain items belonging to him was illegal as proper consent was not obtained by police before the seizure of those items. Appellant first asserts that his consent to search the house was invalid as it was the fruit of an improper interrogation conducted after his invocation of the right to remain silent. This contention has been addressed in appellant's third assignment of error above.

Appellant goes on to argue that his consent was ambiguous and that it was merely acquiescence to the authority of the police. Testimony at trial indicated appellant overheard plans to search the house and requested that the police not ransack the house. Appellant then volunteered information as to the location of the duffel bag containing the shotgun.

 Next, appellant contends that the consent to search given by his wife and her father was invalid. The prosecution sought to justify a warrantless search by proving that the consent was given by a third party "who possessed common authority over, or sufficient relationship to, the premises or property to be searched." *Reeves v. State*, 818 P.2d 495, 503 (Okl.Cr.1991); *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The Court determined mutual use of property, or joint access or control of property, is considered to be

sufficient. *Id.* However, even if the third party does not possess actual authority to consent, the warrantless search may still be justified if the authorities have reason to believe the consenting third party has authority. *Id.*

In consideration of the above, one may conclude that either appellant's wife or her father could give valid consent to search the house where the evidence in question was found. The home was owned by her parents, and Tracy Pennington had lived in that home for all of her twenty-three years, except for a period of eight months when she lived with appellant at Fort Sill. The area where appellant's belongings were found was an open area in the basement at the foot of the stairs.

■ Appellant goes on to assert that neither Tracy nor her father had authority to give consent to search his belongings even though they were located in an open area of the house. The State argues that appellant had already relinquished an expectation of privacy in the duffel bags when he gave the police permission to search the house and told them that the shotgun was located in the duffel bag. The State submits further that consent by appellant's wife and father-in-law was valid as it was not readily apparent that they did not have a possessory interest in the duffel bags. We agree with the State's analysis of the facts in this case.

■ The Fourth Amendment's prohibition against warrantless entry of a person's home does not apply to situations where voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises. *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *Matlock,* 415 U.S. at 171, 94 S.Ct. at 993; *Smith v. State,* 604 P.2d 139 (Okl.Cr.1979).

In *White v. United States,* 444 F.2d 724, 726 (10th Cir.1971), the search of a zippered, cloth bag belonging to the defendant was held valid where a consenting third party represented herself as the defendant's wife who had control over the premises and did not disclaim ownership or indicate that the defendant had exclusive ownership of the

item. In the instant case, appellant volunteered information to police regarding the duffel bag. This information led them to the home of Tracy Pennington who in turn led them to the exact location of the closed bag in the basement. The duffel bag was in an open area of the basement in plain view and accessible to all living in the home. Tracy did not indicate to the officers that the bag was exclusively appellant's, nor did she disclaim ownership of the bag.

The officers knew that Tracy Pennington was the wife of appellant and that she resided at the location where the search was conducted. There were reasonable grounds to believe that Tracy, as the wife of appellant, would have common access to the bag in the basement and common authority over the house in which she had lived for more than twenty years. The subsequent search conducted by police to recover the trench coat and baseball hat was similarly permissible for the aforementioned reasons. The officers entered the home by consent of appellant's father-in-law who exercised primary authority over the premises. Tracy Pennington returned home and, along with her father, accompanied the officers while they retrieved the additional items requested by the Lawton authorities. These additional items of evidence were recovered from the same area of the basement as the shotgun. Therefore, we conclude that the seizure of these items was, likewise, proper.

Finally, as discussed above, we find that even if the search lacked a valid consent, the evidence was still properly admitted under the "inevitable discovery" to warrantless searches exception. *See Nix,* 467 U.S. at 444, 104 S.Ct. at 2509. This proposition is without merit.

In his fifth assignment of error, appellant contends that his arrest for being absent without leave in Ohio was improper because the police lacked probable cause to support the arrest. Appellant then surmises that any evidence seized as the fruit of that arrest was improperly admitted at trial. The record clearly shows that the basis for the actions of the Akron police in arresting appellant were his being absent without leave from the United States Marine Corp and murder. Appel-

lant was informed shortly after arriving at the police station of the murder warrant and was subsequently given a *Miranda* warning before any statements were made by him. Therefore, he suffered no prejudice and the arrest was lawful. *State v. Fairbanks,* 32 Ohio St.2d 34, 289 N.E.2d 352, 357 (1972). Finally, any evidence obtained as a result of that arrest was admissible at trial. Accordingly, this assignment of error must fail.

▮ Appellant claims, for his twelfth assignment of error, that error resulted from the admission of evidence at trial which may have suggested that other crimes or bad acts had been committed by him. Specifically, appellant complains of evidence regarding (1) the check he wrote to purchase the murder weapon which was an insufficient funds check, (2) the fact that appellant sawed off the barrel of the murder weapon, and (3) whether appellant's girlfriend was aware that he was married when she met him.

As a general rule, evidence of crimes other than those for which one is on trial cannot be offered to prove guilt of the crimes under consideration. *Blakely v. State,* 841 P.2d 1156, 1159 (Okl.Cr.1992). A well-recognized exception to this rule is that evidence of other offenses may be admissible where it tends to establish motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. *Id.;* 12 O.S. 1981, § 2404(B).

The introduction of the evidence regarding the check was relevant to corroborate other evidence that it was appellant who purchased the murder weapon. The fact that the check bore an "NSF" stamp was incidental to the purpose for which the check was offered. The evidence that appellant sawed off the barrel of the shotgun which he purchased was admissible under the exception to show preparation, plan and intent. The employee at Wal–Mart who sold the shotgun to appellant testified that appellant told him that he wanted the gun for dove hunting. With respect to the question about appellant's marital status, the defense failed to make a timely objection as the witness had already answered. Additionally, the court's response in each instance was to sustain the objection, while specifically stating it would admonish

the jury to disregard the answer if the State failed to demonstrate relevance and upon a request to do so. The defense failed to make such a request. We find that error, if any, here was harmless. *Simpson,* 876 P.2d at 698.

▮ Appellant has the burden of establishing that the prejudice substantially outweighed the probative value of the evidence. Appellant has failed to meet that burden. Therefore, this proposition of error must fail.

▮ In his thirteenth assignment of error, appellant asserts that reversible error resulted from the admission into evidence of post-mortem photographs. This Court has considered allegations such as the one now submitted by appellant on numerous occasions. *See e.g. McCormick v. State,* 845 P.2d 896, 898 (Okl.Cr.1993). A mere claim of undue gruesomeness or duplication is insufficient as the burden is on the defendant to prove that he was injured by the error of admission. "Photographs are admissible if their content is relevant and unless their probative value is substantially outweighed [by] their prejudicial effect." *Bryson,* 876 P.2d at 258. The pictures complained of in the instant case may be graphic, however, they "were not so repulsive as to be inadmissible." *McCormick,* 845 P.2d at 898–99. This proposition of error is meritless.

In his fourteenth proposition of error, appellant maintains that certain comments made by the prosecutor at the trial below constituted prosecutorial misconduct and require reversal. We disagree. Upon review of the subject comments, we find that they fall within the wide latitude this Court has previously recognized as proper argument and discussion. *Holt v. State,* 628 P.2d 1170, 1171 (Okl.Cr.1981). Furthermore, in some instances, the trial court sustained defense objection and thereby cured any error. *Pickens v. State,* 850 P.2d 328, 341 (Okl.Cr. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994). None of the comments at issue can be considered outcome determinative. Accordingly, this proposition of error fails.

## SECOND STAGE ISSUES

 In his eleventh proposition of error, appellant contends that the trial court committed reversible error when it sustained the State's Motion in Limine preventing the introduction of evidence regarding "Steroid Rage Syndrome." Appellant argues that the trial court was too mechanistic in its application of the rules of evidence when it prevented the use of this information in mitigation.

At the motion hearing, the State produced evidence regarding the subject of "Steroid Rage Syndrome" through its expert witness, Dr. Call, a forensic psychologist. This testimony indicated that study of this syndrome was in its infancy and that only a small number of published articles exist. Furthermore, of the only twelve published articles on the subject, several of these disclaim the fact that the syndrome exists. Essentially, there was no evidence presented that, at the time, Steroid Rage Syndrome was a valid scientific theory or that there existed a reliable scientific technique for the diagnosis of the syndrome.

Appellant argues that the trial court's apparent use of the *Frye* [1] test to determine the issue was improper and that the evidence was admissible under the more relaxed standard set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). This Court has now expressly adopted the *Daubert* standard. *Taylor v. State*, 889 P.2d 319, 328 (Okl.Cr.1995). The trial court did not have before it sufficient background evidence or expert testimony to allow such syndrome evidence to be allowed at trial. The appellant did not meet his burden of proof for admissibility of the evidence. This proposition of error must fail.

 In his fifteenth proposition of error, appellant asserts that insufficient evidence was presented at trial to support the aggravating circumstances alleged by the State.

 When the issue of sufficiency of the evidence regarding an aggravating circumstance is raised on appeal, this Court will utilize the test of "whether there was any competent evidence to support the State's charge that the aggravating circumstance existed." *Woodruff v. State*, 846 P.2d 1124, 1147 (Okl.Cr.), *cert. denied*, —— U.S. ——, 114 S.Ct. 349, 126 L.Ed.2d 313 (1993). Furthermore, the evidence must be viewed in the light most favorable to the State. *Romano*, 847 P.2d at 387.

Appellant argues first that there was insufficient evidence presented at trial to support the finding that he created a risk of death to more than one person. He bases this contention on the lack of evidence presented that appellant was aware that anyone else was in the store at the time he killed the victim. Regarding this particular aggravator, this Court has declared "it is not the death of more than one person which supports this aggravating circumstance, but the defendant's acts that create the risk of death to another which are in close proximity, in terms of time, location and intent to the act of the killing itself." *Snow v. State*, 876 P.2d 291, 297 (Okl.Cr.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1165, 130 L.Ed.2d 1120 (1995).

We find that the act of repeatedly firing a shotgun in a rather small, enclosed area such as a 7–11 store is a reckless act. Principe was in the store at the time and could easily have been killed by one of those shotgun blasts. However, the fact that the location of the shooting was a public area in which anyone could have entered and been injured or killed by a direct shot or ricocheting shot is not our sole consideration. To suggest that any murder committed in a public place might qualify under this aggravator is far too broad an application. In this case, we find that appellant did not "knowingly" create a great risk of death to anyone other than the victim. Therefore, we determine that sufficient evidence was not presented at trial to support this aggravator.

 Appellant next asserts that the evidence was insufficient to support the jury finding that he killed the victim to avoid arrest or prosecution. The existence of this aggravator may be proven by circumstantial evidence. *Snow*, 876 P.2d at 299. We are

---

1. *Frye v. United States*, 54 App.D.C. 46, 47, 293 F.1013, 1014 (1923).

able to find that the evidence in the present case supports the jury finding. We find, further, that the evidence excludes all other reasonable hypotheses.

The evidence presented in the instant case indicates that appellant shot Grooms almost immediately upon entering the store. No evidence was presented that the victim posed any threat to appellant or that he even attempted to defend himself. Once Grooms had been shot several times, appellant did not go near him, but rather, attempted to rob the store by repeatedly shooting the cash register. Because he was unable to open the cash register, appellant was forced to leave empty-handed.

Additional evidence to consider is that appellant wore no disguise, nor made any attempt to conceal his identity, other than killing the only person he saw in the store. Furthermore, by the time the witness Lynn Smith entered the store for a cup of ice, appellant had no means to shoot her as he had run out of ammunition. Consequently, we find that the evidence supported the finding of the jury that appellant killed the victim to avoid arrest or prosecution for the crime of robbery with a firearm.

■■■ Finally, appellant asserts that the evidence produced at trial was insufficient to support the finding that he presents a continuing threat to society. Appellant's basis for this contention lies in the fact that he has no prior convictions.

■■■ A prior criminal record is not required to support this aggravator as this Court has upheld the existence of this aggravating circumstance based solely upon the evidence of the calloused nature of the crime itself. *Snow*, 876 P.2d at 298; *Workman v. State*, 824 P.2d 378 (Okl.Cr.1991), *cert. denied*, 506 U.S. 890, 113 S.Ct. 258, 121 L.Ed.2d 189 (1992). As the Court stated in *Snow* "[t]he defendant's attitude is critical to the determination of whether this defendant poses a continuing threat to society. A defendant who does not appreciate the gravity of taking another's life is more likely to do so again." *Id.* This Court has considered the callous nature of the crime itself in making a finding of this aggravator in numerous other cases. *e.g. Smith v. State*, 819 P.2d 270, 277 (Okl.Cr.1991), *cert. denied*, 504 U.S. 959, 112 S.Ct. 2312, 119 L.Ed.2d 232 (1992); *Battenfield v. State*, 816 P.2d 555 (Okl.Cr.1991), *cert. denied*, 503 U.S. 943, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992); *Boltz v. State*, 806 P.2d 1117 (Okl.Cr.1991), *cert. denied*, 502 U.S. 846, 112 S.Ct. 143, 116 L.Ed.2d 109 (1991).

In the present case, appellant immediately shot the victim upon entering the store. Grooms was shot as a matter of course in appellant's attempted robbery. Grooms was never given an opportunity to cooperate in any way to save his life. In addition to this evidence, other evidence was presented that appellant had made threats of violence while in custody. Accordingly, we find that the evidence was sufficient to support the finding that appellant poses a continuing threat to society. For these reasons, the above proposition of error must fail.

■■■ Appellant's sixteenth proposition of error contends that a complaint form and attached letter, allegedly written by him while in jail, which threatened violence if certain conditions were not met was improperly admitted against him at trial. He argues further, that there was no self-authenticating information on the documents nor did this evidence meet the requirements of the Oklahoma Evidence Code.

■■■ The requirement of authentification is initially a preliminary question for the trial judge as a matter of conditional relevance under 12 O.S.1991, § 2105(B). *New v. State*, 760 P.2d 833, 835 (Okl.Cr.1988). Authentification may be established by direct or circumstantial evidence. *Id.* The requirement of identification or authentification may be satisfied by the "[a]ppearance, content, substance, internal patterns or other distinctive characteristics taken in conjunction with circumstances." *Id.*; 12 O.S.1991, § 2901(B)(4); *Hightower v. State*, 672 P.2d 671, 676 (Okl.Cr.1983).

In the instant case, an official grievance form was completed in the name of Michael Pennington requesting that he be moved to a single cell. Accompanying that form was a handwritten letter which indicated that appellant did not want to share a cell with a

Mr. Riveria and appellant threatened violence if that is what it took for him to be moved to a single cell. Both documents were mailed to Sheriff Stradley in an envelope which bore a return address of "Mike Pennington, 448 Hillwood Dr., Akron, Ohio, 44320." A review of the record indicates that the Hillwood address was the address at which appellant was arrested and is where his wife resides. Testimony also revealed appellant shared a cell with Riviera during his incarceration. Further testimony indicated that information such as appellant's address was not available to the inmate population and that there was no other Michael Pennington incarcerated at the time of appellant's incarceration.

Appellant has failed to provide a logical explanation for his supposition that someone else in the jail fabricated this threat. Furthermore, the content of the grievance, along with the circumstances as they existed at the time, lead to the conclusion that appellant completed the form and drafted the attached letter. Such was properly identified and admitted at trial. Appellant maintained as his defense that someone else wrote the letter. However, he must have proof for such an assertion to have merit. Here, there is none and all the proof is on the State's side. We find that no error resulted, therefore, this proposition does not warrant relief.

■■■ In his seventeenth proposition of error, appellant asserts that the admission of "victim impact" evidence which included facts about the victim, of which appellant was unaware at the time of the murder, violated his constitutional rights. Appellant further argues that the admission of victim impact evidence should be limited to the very narrow factual circumstances found in *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).

We find that the evidence presented at the trial below regarding the victim and the effect of the victim's murder upon his family was relevant to the sentencing determination and well within the contemplation of *Payne*. We agree that victim impact evidence should be restricted. However, this type of evidence is admissible when its use is confined to particular information about the victim

and the circumstances which resulted to the immediate family because of the death. The Supreme Court has allowed victim impact evidence. It was proper here and did not exceed the bounds of proper evidence. 22 O.S.Supp.1992, § 984.1. Accordingly, this proposition of error must fail.

■■■ In his eighteenth proposition of error, appellant contends that the admission of victim impact evidence at the sentencing stage of the trial below violated the prohibition against ex post facto laws. Appellee submits that the amendment of 21 O.S.1991, § 701.10 by the Oklahoma Legislature in 1992 effected a change in a mode of procedure only, not a substantive change, and as such, ex post facto consideration is inapplicable in the present case.

This Court recently determined that "[l]egislative and judicial consistency demands that as the change in Oklahoma's capital sentencing scheme including the life without parole sentencing option is procedural, legislative changes in admissible testimony during the second stage of a capital trial are procedural as well." *Mitchell v. State*, 884 P.2d 1186, 1204 (Okl.Cr.1994).

The Court further noted that victim impact testimony is not used to convict the offender, but rather is used in the sentencing procedure after conviction. *Id.* Therefore, we find that ex post facto consideration is inapplicable in the instant case. This assignment of error fails.

■■■ In his nineteenth proposition of error, appellant claims that reversible error resulted from the trial court's ruling which prevented the admission of certain evidence in mitigation.

Title 21 O.S.1991, § 701.10, provides that "evidence may be presented as to any mitigating circumstance." This Court has construed that language to mean that a defendant "may present any relevant evidence, within the limitations of the rules of evidence, bearing on his character, prior record or the circumstances of the offense." *Chaney v. State*, 612 P.2d 269, 279–80 (Okl.Cr.1980), *cert. denied*, 450 U.S. 1025, 101 S.Ct. 1731, 68 L.Ed.2d 219 (1981).

■ At the trial below, appellant's mother was allowed to testify at some considerable length regarding the early family life of appellant. This testimony included his ability in school, and his participation in extracurricular activities at school. When defense sought to introduce certain photographs of appellant taken when he was very young, after winning a weight lifting contest[2] and in his Marine Corp dress uniform, the prosecutor objected on the basis of relevance and these objections were sustained. In any event, not all evidence which casts the defendant in a kind light is relevant mitigating evidence. *Coleman v. Saffle,* 869 F.2d 1377, 1392–1393 (10th Cir.1989), *cert. denied,* 494 U.S. 1090, 110 S.Ct. 1835, 108 L.Ed.2d 964 (1990). Here, the prosecutor reasoned that evidence pertaining to appellant's "character, disposition or demeanor as he reached young adolescence and teenage years," was relevant. However, he failed to see the relevance of evidence regarding a normal, very early childhood. The trial court agreed with this reasoning when it sustained that objection and advised the defendant to restrict his evidence to that occurring about the time of high school or any time thereafter.

Appellant's mother, sister, and stepfather did present a great deal of testimony as to his childhood, success in school, his athletic ability, and his involvement with his family. Therefore, appellant was able to present pertinent mitigating evidence. Finally, considering the overwhelming nature of the evidence against appellant and the small amount of evidence in mitigation which he was prevented from presenting, the ruling of the trial court was not outcome determinative. *Mayes v. State,* 887 P.2d 1288, 1319–20 (Okl.Cr.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1260, 131 L.Ed.2d 140 (1995). Therefore, this proposition of error is without merit.

■ In his twentieth assignment of error, appellant contends that the "continuing threat" aggravating circumstance is constitutionally infirm in that it is vague and capable of arbitrary and capricious use. The constitutionality of this aggravating circumstance has been upheld by the United States Supreme Court in *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), and by this Court in numerous death penalty cases. *See e.g. Malone v. State,* 876 P.2d 707, 716–17 (Okl.Cr.1994) (listing the numerous decisions of this Court upholding the constitutionality of the "continuing threat" aggravator). Appellant has presented no new justification as to either fact or law for departure from this precedent. Accordingly, this proposition of error fails.

In his twenty-first allegation of error, appellant asserts that due to the placement of the instructions concerning mitigating circumstances among those regarding aggravating circumstances, it was implied that the jury had to unanimously find mitigating as well as aggravating circumstances before they could consider them in determining appellant's sentence. Appellant acknowledges that this Court has previously denied relief on this issue. *Harjo v. State,* 882 P.2d 1067, 1081 (Okl.Cr.1994). Oklahoma does not have a unanimity requirement for the consideration of mitigating circumstances. Accordingly, this proposition of error must also fail.

## MANDATORY SENTENCE REVIEW

Pursuant to 21 O.S.1991, § 701.13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of aggravating circumstances as enumerated in 21 O.S.1991, § 701.12. As discussed above, we found the State presented sufficient evidence to prove appellant murdered Bradley Grooms to avoid arrest or prosecution and there existed the probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. *See supra,* Proposition XV.

In mitigation, appellant presented the testimony of family members, including his mother, who described his upbringing, suc-

---

2. This photograph was objected to on the basis that the defense had not provided it to the prosecution in pretrial discovery.

cess in school, his athletic ability, and his involvement with his family.

■ After carefully reweighing the aggravating circumstances and all mitigating evidence, we find the aggravating circumstances far outweigh the mitigating evidence and that the sentence of death is factually substantiated and appropriate. When reweighing, this Court must review the aggravating and mitigating evidence to ascertain the role which the invalid "great risk of death to more than one person" aggravator played in the jury sentencing process. *Stringer v. Black*, 503 U.S. 222, 230, 112 S.Ct. 1130, 1136, 117 L.Ed.2d 367 (1992). The Court must then determine, through the reweighing process, what the jury in this case would have decided had it not considered the invalid aggravator. *Stringer*, 503 U.S. at 230, 112 S.Ct. at 1137; *Richmond v. Lewis*, 506 U.S. 40, 49, 113 S.Ct. 528, 535, 121 L.Ed.2d 411 (1992).

This Court has provided a thorough analysis of the evidence offered in support of each of the aggravating circumstances, as well as, the evidence in mitigation. We find the discussion above to be sufficient. We do not need to set forth the facts again except to say guilt is clear. We have appellant at the scene, we have him with the death weapon together with an eyewitness and a witness that knows appellant and places him at the crime scene.

Upon carefully considering and reviewing the evidence which supports the two valid aggravating circumstances, as well as the evidence which may be considered mitigating, this Court finds the sentence of death was factually substantiated and appropriate. Furthermore, we find the jury's consideration of the invalid aggravator did not play a significant role in its decision to sentence appellant to death as the evidence supporting the two valid aggravators was concrete and substantial. Finding no error warranting reversal or modification, the Judgment and Sentence is **AFFIRMED.**

AN APPEAL FROM THE DISTRICT COURT OF COMANCHE COUNTY THE

HONORABLE PETER CLINTON MOORE, DISTRICT JUDGE

Appellant, Michael L. Pennington, was tried by jury and convicted of Murder in the First Degree (Malice Aforethought). Appellant was tried in Case No. CRF–91–386, in the District Court of Comanche County before the Honorable Peter Clinton Moore, District Judge. The jury recommended punishment of death. The trial court sentenced accordingly. From this Judgment and Sentence, appellant has perfected this appeal. The Judgment and Sentence of the trial court is AFFIRMED.

LUMPKIN, LANE and STRUBHAR, JJ., concur.

CHAPEL, V.P.J., concurs in result.

CHAPEL, Vice Presiding Judge, concurring in result:

The evidence in this case supporting the "continuing threat" aggravator, in my opinion, is very weak. I am not one of those who think this aggravator is a "standardless catch-all." The aggravator serves a valid constitutional purpose—it narrows the class of persons eligible for the death sentence from all murderers to those which the evidence establishes will in the future be a continuing threat to society. I do not find this language vague. If the evidence shows the defendant will in the future continue to be a danger to society I am prepared to vote to uphold the aggravator. However, the evidence used to support this aggravator should be independent of the charged murder.[1] Otherwise, the aggravator does not, in fact, narrow the class of persons eligible for the death penalty because every murderer could be deemed a continuing threat to society because of the conviction of the crime charged. In this case, I find the evidence, other than the shotgun killing of the victim, that Pennington will be a continuing threat to society lacking.

I do find the evidence sufficient to uphold the aggravator "that the murder was committed for the purpose of preventing lawful arrest or prosecution". Here, Pennington

---

**1.** See my comment in footnote 60 of *Cannon v.* *State,* 904 P.2d 89 (Okl.Cr.1995).

bought a shot-gun and sawed off the barrel. He entered a convenience store with the clear and obvious intent to commit robbery with the loaded sawed-off shot-gun. He made no attempt to disguise himself when he shot the defenseless clerk in cold blood. He shot the cash register in an attempt to get at the money inside. He then ran, taking the gun with him to Ohio. I believe this evidence, while circumstantial, is sufficient to support this aggravator. Moreover, the evidence supporting this aggravator outweighs the evidence in mitigation submitted by Pennington. I therefore find the sentence of death appropriate under our law. It does appear to me, however, that the opinion of the Court should more thoroughly analyze the evidence in support of the aggravator and the mitigation evidence in its reweighing.